418 So.2d 1177 (1982)
McKENZIE TANK LINES, INC., Employer and R.P. Hewitt Associates of Florida, Servicing Agent, Appellants,
v.
Foster G. McCAULEY and Division of Workers' Compensation, Appellees.
No. AH-369.
District Court of Appeal of Florida, First District.
August 31, 1982.
*1178 Luke G. Galant of Dawson, Galant, Maddox, Sulik & Nichols, P.A., Jacksonville, for appellants.
William Thomas Edwards, Jr. of the Law Office of William T. Lassiter, Jr., Jacksonville, for appellees.
ERVIN, Judge.
McKenzie and its servicing agent appeal from an order of the deputy commissioner which refused to exact the 25% penalty required by Section 440.09(4), Florida Statutes (1979), to be placed upon compensation benefits awarded to injured claimants who willfully refuse to use safety appliances. Explication of the requirements of Section 440.09(4), Florida Statutes, a workers' compensation statute that has existed in a basically unaltered form since 1935, will be of benefit to both bench and bar. However, in delineating the standards and purpose of this somewhat ambiguous law, we are convinced that the deputy commissioner has erred. Therefore, we reverse and remand the deputy's order for further necessary factual findings.
While working as a truck driver for the appellant, McKenzie Tank Lines, Inc., appellee and claimant Foster McCauley was required to load caustic soda into a tank truck. While doing so, some of the soda flew into his eyes, causing the loss of use of his right eye and vision and depth perception problems with his left eye. The employer/carrier (e/c) paid temporary disability benefits, but affirmatively defended, arguing that McCauley was instructed to wear safety goggles, as required by a U.S. Occupational Safety and Health Administration (OSHA) mandate. 29 U.S.C. § 651 et seq.; see also 29 C.F.R. §§ 1910.132, 1910.133, 1910.262. Specifically, the e/c relies on Section 440.09(4), providing:
Where injury is caused by the willful refusal of the employee to use a safety appliance or observe a safety rule required by statute or lawfully promulgated by the division, and brought prior to the accident to his or her knowledge, the *1179 compensation as provided in this chapter shall be reduced 25 percent.
At the hearing McCauley testified that he had never been issued goggles nor been ordered to wear goggles by the e/c. A former truck driver for the employer testified that it was only after the claimant's accident that goggles were issued to employees with orders to wear them. On the other hand, the employer's dispatcher stated that he personally issued goggles to the claimant before the accident. In support of this statement, the e/c's terminal supervisor produced an invoice for the purchase of a number of goggles dated a few months prior to the accident. The supervisor also testified that employees were told to wear the protective goggles at various safety meetings held prior to the claimant's accident.
An inspection of the claimant's truck following the accident revealed a pair of goggles behind the driver's seat. The e/c's witnesses identified the goggles as those issued to the claimant, but the claimant countered this by stating that he had borrowed them from his brother. He asserted that he had been unable to wear them because they were in such bad condition that he was unable to see out of them.
Notwithstanding the obvious factual conflict in the live testimony presented to the deputy commissioner, the deputy's order did not directly resolve the conflict on the evidence before him. Instead his order included a finding that Section 440.09(4) was not applicable to this case as a matter of law. While OSHA regulations do apparently require the wearing of safety goggles, the deputy impliedly determined first that only rules "lawfully promulgated by the division" of workers' compensation could require the claimant to wear safety goggles, and, although the division had adopted the OSHA regulations as its own, second that OSHA has preempted the field of regulation as to private sector employment. See 29 U.S.C. §§ 651(b)(3), 667 (1970).[1] Consequently, the deputy concluded that "[t]he Division's jurisdiction is now limited to the public sector. Claimant's benefits, therefore, should not have been reduced 25%"[2] Implicit in the deputy's ruling are the views that a violation occurs when an employee refuses to use a safety appliance or observe a safety regulation required by a rule lawfully promulgated by the division, and that the division cannot "lawfully promulgate" a safety rule, because OSHA has preempted the field. However, the language in the statute suggests a different interpretation than that required to accept the deputy's determination. The statutory penalty may be invoked only when an employee willfully refuses "to use a safety appliance or observe a safety rule required by statute or lawfully promulgated by the division, ... ." (emphasis supplied.) The foregoing emphasis placed on the word "or" is important in interpreting this somewhat ambiguously worded statute. In this case use of the emphasized word "or" requires that the two clauses that it separates be read disjunctively. Telophase Society of Florida, Inc. v. State Board of Funeral Directors & Embalmers, 334 So.2d 563, 566-567 (Fla. 1976); 30 Fla. Jur. Statutes § 100 (Rev. 1974). Consequently, the statutory penalty is effective in those instances when an employee willfully refuses: (1) to use a safety appliance, or (2) to observe a safety rule.
We construe the emphasized language "required by statute or lawfully promulgated by the division" as applying only to the employee's failure to observe a safety rule. We do so by virtue of the statutory rule of construction known as the doctrine of the last antecedent. In Mallard v. Tele-Trip Co., 398 So.2d 969, 972 (Fla. 1st DCA 1981), *1180 rev. denied, 411 So.2d 384 (Fla. 1981), we noted, as stated in Quindlen v. Prudential Insurance Co., 482 F.2d 876, 878 (5th Cir.1973), that "relative and qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote." (emphasis supplied); see also, 82 C.J.S. Statutes § 334 (1953).
We consider, then, the statutory penalty to come into play only if the claimant "willfully refuses" to
(1) use a safety appliance, or
(2) observe a safety rule required by statute, or
(3) observe a safety rule lawfully promulgated by rule of the division of workers' compensation.
The second category  the "willful refusal" to observe a safety rule required by statute  turns on the construction of the word "statute." We think the plain meaning of the word "statute" encompasses either a state or federal statute, such as the OSHA legislation. We do so bearing in mind that one of the purposes of Section 440.09(4) is obviously to act upon the employee and employer in a "carrot and stick" approach. Section 440.09(4), as gleaned from its terms, is intended to induce the employer into providing for a safe environment for the worker, as well as requiring that workers follow safe practices on the job.
By adhering to the strict standards of the statute and insisting on safe conditions at the job site, the employer is rewarded with a "carrot" by being relieved of some of the burden of compensating in full a claimant who is injured due to the latter's willful refusal to observe prescribed safety practices. On the other hand, the employer who fails to demand such practices from workers receives the "stick", or burden of paying out full compensation benefits to the injured worker. With this designed purpose in mind, we see no reason why the legislature should not have intended for the word "statute" in Section 440.09(4) to include the OSHA provisions of 29 U.S.C. § 651 et seq., which are the paramount worker safety statutes geared toward the elimination of significant harm to the worker. Industrial Union Department, AFL-CIO v. American Petroleum Institute, 448 U.S. 607, 611, 100 S.Ct. 2844, 2849, 65 L.Ed.2d 1010 (1980).
Because we perceive error in the deputy's determinations caused by his interpretation of Section 440.09(4), Florida Statutes, a remand to the deputy is required for the purpose of entering additional factual findings. In order to aid him in his further deliberations, we consider it necessary to analyze some of the initial requirements of the statute which are prerequisites to applying it to a claim for compensation. Initially, we note that this statute is an e/c's partial affirmative defense to a claim for benefits. 1A Larson, Workmen's Compensation, § 33.10 at 6-48 (1979) (hereinafter cited as Larson). As an affirmative defense, it is the e/c's responsibility to plead carefully this defense or forever waive it. This can be easily accomplished by a notice of hearing, a responsive pleading to a claim or notice of hearing, or in the pre-trial stipulation routinely filed prior to a hearing before a deputy commissioner. See generally, Fla. W.C.R.P. 7, 10(a)(1). We point out that in so doing, the parties are taking steps to preserve the issue for any future appellate review as noted in our recent opinion in Sunland Hospital, State of Florida v. Garrett, 415 So.2d 783 (Fla. 1st DCA, 1982).
Turning to the requirements of Section 440.09(4), it is apparent that the statute can only be defensively invoked when there is a causal relationship between a violation of the statute and the injury. Larson, supra, § 33.10 at 6-50; Herman v. Aetna Casualty & Surety Co., 71 Ga. App. 464, 31 S.E.2d 100, 103 (1944). While the evidence is suggestive as to the requisite causality, such issue must be determined by the deputy. Further, the statute requires that there be a "willful refusal of the employee to use a safety appliance or observe a safety rule...." (emphasis supplied).
As noted by the Florida Supreme Court in Smit v. Geyer Detective Agency, Inc., 130 So.2d 882, *1181 884 (Fla. 1961), this means that "there must be an intentional commission of an act violative of a statute with knowledge that such an act is likely to result in serious injury, or the illegal act must be done with a wanton disregard of probable consequences." See also White v. C.H. Lyne Foundry & Machine Co., 74 So.2d 538 (Fla. 1954). This is a factual question to be determined by a deputy commissioner whose determination must be supported by substantial competent evidence. Id. at 540.
While the Supreme Court has required a determination of "an intentional commission of an act violative of [the] ... statute," we point out that statutes of this nature generally recognize a caveat to the foregoing rule: "If the employee had some plausible purpose to explain his violation of a rule, the defenses of violation of safety rules or wilful misconduct are inapplicable, even though the judgment of the employee might have been faulty... ." Larson, supra, at § 33.40. In the case at bar, assuming the deputy commissioner found a willful refusal to wear the goggles, it is conceivable that he could accept the claimant's testimony that he did not use the goggles because they were in such poor condition as to render their use impracticable.
Similar to the case at bar is Cochran v. Canulette Shipbuilding Co., 157 La. 184, 102 So. 198 (1924), wherein a claimant was ordered to wear safety goggles. He mounted a narrow plank 80 feet above the ground to bore rivet holes into a beam. Because the opaque side-pieces of the goggles obscured his side vision, thereby increasing the danger of falling, he removed his goggles. A piece of steel flew into his eye, causing the loss of the eye. His refusal to wear the goggles was held excused. Contrast Carrico v. State Compensation Commissioner, 127 W. Va. 463, 33 S.E.2d 281 (1945) (frequent steaming of glasses not excused).[3]
Inextricably intertwined with the requirement of a willful refusal is the necessity of determining that an employee had prior notice of the order to use a safety appliance or observe a safety rule. See generally, Larson, supra, at § 33.20. This is supported by the statutory language in Section 440.09(4), requiring that an order to use a safety appliance or observe a safety rule be "brought prior to the accident to his or her [the claimant's] knowledge, ... ." Statutes of this type dictate actual rather than constructive notice to satisfy the standard of a "willful refusal." Id., § 33.20 at 6-51 to 6-52. For example, in Nashville, C. & St. L. Ry. v. Wright, 147 Tenn. 619, 250 S.W. 903 (1923), a claimant was held not to have willfully violated a rule requiring the wearing of safety goggles on facts showing that the employer had merely posted the rule, but not revealing that the employee had ever read it. Contrast, Gregory v. McKesson & Robbins, Inc., 54 So.2d 682, 684 (Fla. 1951) (employee deemed to have known about law making it illegal to break the speed limit, because this is a matter of common knowledge).
As explained by Professor Larson: "The concept of wilfulness connotes also that the employee understand the rule of which he has knowledge, and realize that the device involved is in fact a safety device to guard against a danger which has been explained to him." Larson, supra, § 33.20 at 6-53. Further, any direction to observe a safety rule must clearly be an order and not merely a cautionary instruction or advice. Id. at 6-55.
Thus, the deputy will be required to determine whether there has been an unexcused "willful refusal" by the claimant, and if there has been, a finding will be necessary as to whether the claimant had actual notice of an order to wear safety goggles, or was issued goggles with an order to wear them for safety reasons.
*1182 Since we determine the term "statute" refers to either a federal or state enactment, the question of whether federal law has preempted the field is immaterial to a determination of the issue at hand: whether Section 440.09(4)'s penalty should be exacted under the circumstances presented. Accordingly, the deputy will be required on remand to address on its merits the issue of whether the claimant willfully refused to comply with any of the foregoing statutory requirements.
REVERSED and REMANDED for further consistent proceedings.
McCORD and JOANOS, JJ., concur.
NOTES
[1] Whether federal OSHA regulations preempt state regulations that are as stringent or more stringent than federal requirements is doubtful in light of an apparent recent federal court decision in Florida Citrus Packers v. California, No. C-81-4218EFL, Nat'l. Law Journal, August 30, 1982 at 5, col. 1 (N.D. Cal. 1982). The issue of federal preemption was recently and concisely treated in Community Communications Co. v. Boulder, ___ U.S. ___, ___-___, 102 S.Ct. 835, 846, 70 L.Ed.2d 810, 825-826 (1982) (Rehnquist, J., dissenting).
[2] Rec. at 531.
[3] Although not relevant to our decision, but meaningful to an understanding of notions of a "willful refusal" is the situation wherein an employer orders an employee to use a safety appliance or observe a safety rule but does not enforce the order or rule, thereby allowing workers to disregard proper safety procedures. If this situation exists and the employer is aware that employees are disregarding the rule, it is submitted that this should also excuse a claimant/employee's "willful refusal." See Larson, supra, at § 33.30.