MICKLE, Judge.
The Employer/Self-insured, Escambia County Board of County Commissioners (Employer), appeals an order of the judge of compensation claims (JCC) awarding William J. Reeder (Claimant) full compensation benefits. Claimant cross-appeals the denial of statutory penalties. Finding that Claimant was entitled to an assessment of penalties against Employer, we reverse that portion of the order holding otherwise. In all other respects, we affirm the order. § 440.09(4), Fla.Stat. (1991).
Claimant, a heavy equipment operator, was injured on December 29,1992, when the D-9 Caterpillar bulldozer he was operating slipped over the edge of a tall garbage mound at the county landfill and rolled over side-to-side several times. Claimant was thrown clear of the bulldozer before it came to rest at the base of the mountain of refuse. He sustained injuries mainly to his ribs, right shoulder, and right arm. Although clearly advised that safety devices must be worn during operation of Employer’s equipment, Claimant was not wearing a seat belt at the time of the accident. The bulldozer was equipped with a functioning safety belt, like a lap belt on an airplane, which was bolted down and adjustable but non-retractable. It was not equipped with a shoulder harness.
Claimant sought payment of indemnity benefits at the full compensation rate, and Employer stipulated to the compensability of the accident. However, Employer’s claims adjuster determined that under the circumstances of the accident, Claimant’s compensation should be reduced by 25 percent pursuant to section 440.09(4), Florida Statutes (1991), because Employer clearly had promulgated a safety rule requiring employees to wear safety belts, the rule had been brought to Claimant’s attention, and Claimant admitted not wearing a seat belt at the time of injury. The statute reads:
Where injury is caused by the knowing refusal of the
employee to use a safety appliance or observe a safety rule required by statute or lawfully promulgated by the division, and brought prior to the accident to his or her knowledge, or where injury is caused by the knowing refusal of the employee to use a safety appliance provided by the employer, the compensation as provided in this chapter shall be reduced 25 percent.
Employer contended that Claimant’s injury was caused by his knowing refusal or failure to wear a seat belt. On the other hand, Claimant asserted that in addition to proof that the injured employee knowingly refused to wear a safety device, an employer must prove that a causal relationship exists between the injuries sustained in the accident and the failure to comply with a seat *224 belt requirement. Claimant sought reimbursement of the 25 percent reduction in his compensation, in addition to statutory penalties, interest, costs, and attorney’s fees.
In interpreting the statute, we find support for Claimant’s position in McKenzie Tank Lines, Inc. v. McCauley, 418 So.2d 1177 (Fla. 1st DCA 1982), in which truck driver/employee McCauley was loading caustic soda into a tank truck when he was injured in an accident arising out of and in the course of employment. Soda flew into his eyes and caused vision problems. The employer paid temporary disability benefits but affirmatively defended, arguing that McCauley had received instructions to wear safety goggles, as required by a United States Occupational Safety & Health Administration mandate. Specifically, the employer relied on the 1979 version of section 440.09(4), which addressed “injury ... caused by the willful refusal of the employee to use a safety appliance or observe a safety rule required by statute or lawfully promulgated by the division, and brought prior to the accident to his ... knowledge,” and which provided for a 25 percent reduction in compensation. A post-accident inspection of McCauley’s vehicle revealed a pair of goggles behind the driver’s seat. The deputy commissioner concluded that section 440.09(4) was inapplicable to McCauley’s case as a matter of law. For reasons not pertinent to the case sub judiee, we reversed the order in McKenzie and remanded for additional factual findings. Id. at 1180-82.
In McKenzie, we noted that section 440.09(4) may afford an employer/carrier a “partial affirmative defense to a claim for benefits.” Id. at 1180, citing, 1A Larson, Workmen’s Compensation, § 33.10 at 6-48 (1979). McKenzie is instructive for our analysis of section 440.09(4) in that we found that “it is apparent that the statute can only be defensively invoked when there is a causal relationship between a violation of the statute and the injury.” Id. at 1180. Since our issuance of McKenzie in 1982, the statute has been amended so that now it addresses, first, an injury caused by the employee’s “knowing refusal” rather than “willful refusal” to use a safety appliance. Second, the applicable version embraces a second scenario, possibly applicable here, “where injury is caused by the knowing refusal of the employee to use a safety appliance provided by the employer.” We conclude from the plain language of section 440.09(4) and from McKenzie that, irrespective of the ensuing statutory changes, resolution of the matter in the lower tribunal required a determination as to whether “a causal relationship” exists between Claimant’s injury and bis knowing refusal to wear an available safety device provided by Employer.
The established rule in workers’ compensation is that a causal relationship between an employee’s injury and the industrial accident must be shown by competent substantial evidence. § 440.02(1) & (17), Fla. Stat. (1991) (defining “accident” and “injury,” respectively); Gator Industries, Inc. v. Neus, 585 So.2d 1174 (Fla. 1st DCA 1991); Stephens Trucking Co. v. Bibbs, 569 So.2d 490 (Fla. 1st DCA 1990). Claimant met his burden on that issue, and the accident was found to be compensable. Given the fact that Claimant had knowingly refused to wear a safety belt at the time of the accident, Employer, by raising the statutory partial affirmative defense, had the burden to prove the existence of a causal relationship between the injuries sustained in the bulldozer accident and Claimant’s failure to wear a safety device. It was the JCC’s duty to resolve this issue. McKenzie, 418 So.2d at 1180.
Claimant testified that even if he had worn the lap belt as the bulldozer rolled down from atop the garbage mound, he still could have struck the arm rests in the cab with his arms, shoulders, and ribs, and his side or chest could have hit the pointed knobs of the track control lever as well as the transmission and tilt-blade knobs. Because he was not secured in the cab by a seat belt, he was ejected and landed a number of feet outside the vehicle.
The emergency room physician (Dr. Benson) testified that she could not tell if Claimant’s failure to use a seat belt had any bearing on his injuries. The orthopedic surgeon who treated Claimant (Dr. Saiter) testified that he could not tell whether the failure to use a safety belt contributed to the injuries. *225 According to Dr. Saiter, in most instances it is advantageous to wear a seat belt, yet he could not say this in Claimant’s ease. In fact, Dr. Saiter stated that it might have been fortunate that Claimant was thrown clear of the tumbling bulldozer.
Over Claimant’s objection, Employer presented the testimony of Mr. Bloomberg, an engineer employed by the forensic engineering firm that Employer hired to investigate the bulldozer incident. Bloomberg correctly assumed that the bulldozer went through a side-to-side, rather than end-to-end, rollover down the mound of garbage. Considering the mechanics of the rollover and the fact that Claimant had not worn a seat belt, Bloomberg concluded that if Claimant had worn a safety belt, he would not have struck his right side on the way down the slope and, therefore, he would not have been injured.
Claimant challenged Bloomberg’s expertise on several grounds below but focused on Bloomberg’s assumption that a lap-type belt without a shoulder harness would have prevented Claimant’s upper torso from being jostled about during a side-to-side rollover and, thus, would have prevented injuries to his right side. The JCC found this assumption to be flawed, and he exercised the prerogative to reject the engineer’s conclusions. Storage Technology Corp. v. Philbrook, 448 So.2d 42, 44 (Fla. 1st DCA 1984) (JCC may reject all or part of uneontroverted testimony that is disbelieved). Having reviewed Bloomberg’s testimony relating to his credentials and to his assumptions, we conclude that the record supports the JCC’s decision. Likewise, the record substantiates the JCC’s finding that although Claimant had been aware of and had knowingly disregarded Employer’s valid safety rule, the proof was insufficient to establish the requisite causal connection (between the injury and the failure to wear a safety device) that would justify Employer’s taking a statutory 25 percent reduction in Claimant’s indemnity benefits. Accordingly, we affirm the JCC’s order restoring the 25 percent of compensation.
Claimant cross-appeals the JCC’s refusal to assess penalties. Section 440.20(6), Florida Statutes (1991), requires an employer or carrier that “initially controverts the right to compensation” to file with the division, on or before the 21st day after having knowledge of the employee’s injury, a notice (on a prescribed form and in a specified manner) “stating that the right to compensation is controverted” and including the grounds for controvertion. An employer or carrier that initially accepts a claim but then controverts it must file with the division a notice to controvert (on a specified form in a particular manner), within 10 days after the date of initial cessation of benefits. The carrier must furnish a copy to the employee and employer. Crown Hotel v. Friedman, 438 So.2d 993 (Fla. 1st DCA 1983).
Employer received notice of Claimant’s injury on the date of the accident. It is an employer/carrier’s burden to show that a claim has been sufficiently controverted. Four Quarters Habitat, Inc. v. Miller, 405 So.2d 475, 479 (Fla. 1st DCA 1981). Employer did not comply with the provisions of section 440.20(6).
In that regard, the JCC correctly found that “a formal timely notice of denial was not filed with the division as required.” Claimant noted that Employer, in fact, never filed an actual notice to controvert. Section 440.20(7), Florida Statutes (1991), sets forth certain grounds for excusal of the statutory mandate (to pay a timely installment of compensation) if proper notice was filed under subsection (6) or where nonpayment of benefits due “results from conditions over which the employer or carrier had no control.” A proper excusal will avoid assessment of the statutory penalty. No such uncontrollable conditions contemplated in section 440.20 were found in the instant case. Instead, Employer was excused from the statutory penalty because the JCC found that Employer “notified the claimant of the denial by letter which, at least, complies with the spirit of the law.” We cannot agree. The untimely March 22, 1993, letter from Employer’s claims adjuster to Claimant’s counsel was sent almost three months after the accident. Unless notice is filed under subsection (6), or failure to pay is found to be beyond the employer/carrier’s control, a punitive penalty shall be added if any installment of compensation for benefits “without an award” is not *226 paid “within 14 days after it becomes due.” § 440.20(7), Fla.Stat.; Friedman, 438 So.2d at 994 (affirming imposition of penalties with disability award, where notice to controvert was not timely filed).
In that Claimant was awarded full compensation benefits, 25 percent of which had not been paid by Employer “within 14 days” after becoming due originally, the JCC should have imposed statutory penalties. Watkins v. Resources Property Management, 596 So.2d 763, 765 (Fla. 1st DCA 1992) (on mot. for reh’g) (JCC should have imposed penalties, with interest, where benefit checks were issued beyond 14-day deadline).
Claimant’s cross-appeal position is supported by Santana v. Atlantic Envelope Co., 568 So.2d 528 (Fla. 1st DCA 1990), where claimant Santana was injured in March 1987 and immediately received disability benefits. However, for 16 two-week periods, his benefits were miscalculated, to his disadvantage. In August 1988, the employer/carrier accepted the error and issued a check for the difference. We construed section 440.20(7) & (9) as applying to situations where any installment is paid in part but the rest is withheld incorrectly. Under such circumstances, interest and penalties shall attach. Id. at 530; McClure v. Goldman, Klasfeld, Horkey & Ferraro, 594 So.2d 353 (Fla. 1st DCA 1992) (reversing order insofar as it denied claim for penalties, interest, costs, and attorney’s fees where compensation was underpaid).
In the case at bar, Employer paid compensation but improperly withheld 25 percent. Claimant requested penalties in the claim for benefits and pretrial stipulation. Having established that Employer’s 25 percent offset equates to a failure to make timely payment of an installment,- Claimant has demonstrated a basis for assessment of penalties with interest. § 440.20(7) & (9), Fla.Stat.
Accordingly, we affirm the order restoring full compensation and awarding statutory interest on past-due compensation, reimbursement of taxable costs, and attorney’s fees. We reverse, however, that portion of the order denying statutory penalties, and remand to allow for imposition of penalties and interest due and payable in accordance with section 440.20, Florida Statutes.
AFFIRMED in part, REVERSED in part, and REMANDED with instructions.
KAHN and VAN NORTWICK, JJ., concur.