IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

TECO ENERGY, INC. and TECO
SERVICES, INC.,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

    Appellants,

v.                       CASE NO. 1D17-0233

MICHAEL K. WILLIAMS,

    Appellee.

_____/

Opinion filed December 19, 2017.

An appeal from an order of the Judge of Compensation Claims.
Ellen H. Lorenzen, Judge.

Date of Accident:  April 25, 2013.

Gwen G. Jacobs of Bennett, Jacobs, & Adams, P.A., Tampa, for Appellants.

Laurie Thrower Miles of Miles and Parrish, P.A., Lakeland, and Wendy S. Loquasto of Fox & Loquasto, P.A., Tallahassee, for Appellee.


M.K. THOMAS, J.

Teco Energy, Inc. and Teco Services, Inc. ("E/C"), appeal a final order awarding compensability of a total knee replacement for Michael Williams ("Claimant") and related attorney fees and costs.  The E/C argues the Judge of Compensation Claims ("JCC") erred by, 1) barring, as a matter of law, its defense

of major contributing cause ("MCC"); and 2) applying, *sua sponte*, the "120-Day Rule" pursuant to section 440.20(4), Florida Statutes, as a limitation of available defenses. We agree and reverse.

## *Factual & Procedural History*

On April 25, 2013, Claimant, a journeyman electrician, experienced pain in his left knee after slipping on the step of a pick-up truck at work. The E/C accepted compensability of the left knee injury and authorized medical care with Dr. Morse, an orthopedic surgeon. In February of 2011, Dr. Morse treated Claimant for a non-work related injury to the right knee, which required surgery.  During that treatment, the doctor also examined the Claimant's left knee. Dr. Morse noted Claimant's left knee symptoms in 2011 included significant medial compartment pain, suggestive of either arthritis or a preexisting tear, but the doctor saw no need for treatment of the left knee at that time.

When Dr. Morse examined Claimant after the April 25, 2013, workplace injury to the left knee, he reported significant preexisting left knee arthritis as confirmed by X-rays and an MRI. When compared to the 2011 examination, Claimant demonstrated more symptoms for grinding and pain behind the left kneecap. However, Claimant's symptoms were concentrated in the medial joint line which correlated with an acute injury of a medial meniscal tear.  Dr. Morse recommended left knee surgical repair, and indicated seventy percent of the need for

2

surgery was related to an aggravation from Claimant's underlying work injury, and thirty percent was related to preexisting left knee arthritis.

The E/C authorized the left knee surgery. According to Dr. Morse, the surgery revealed minimal arthritis in the medial joint line and moderate arthritis behind the kneecap. Following the surgery, Dr. Morse placed Claimant at maximum medical improvement ("MMI") effective March 20, 2014, and assigned a three percent permanent impairment rating. As of the MMI date, Claimant's left knee was asymptomatic regarding the medial joint line with minimal symptoms of mild achiness associated with the arthritis.

At the next office visit, almost a year later, Dr. Morse administered an injection to Claimant's left knee due to complaints of occasional aches and pain. In the medical record documenting the visit, Dr. Morse detailed the complaints were associated with Claimant's arthritis and activity level. In the Uniform Medical Treatment/Status Reporting Form (DWC-25) completed on March 12, 2015, Dr. Morse noted that a steroid injection was performed with no other change in status.

Subsequently, Claimant advised of pain and stiffness on the inside of the left knee, which Dr. Morse reported as typically associated with arthritis. In an April 9, 2015 clinical note, Dr. Morse detailed:

> Currently, he has signs and symptoms consistent with degenerative arthrosis... At this period of time, we recommend that the patient proceed with conservative management consisting of viscosupplementation and providing medial unloader brace. The

3

treatment will be for the degenerative arthrosis and is not intended to treat the initial work injury. The patient will maintain his current maximal medical improvement status and does not need any limitation at work.

In the DWC-25 form for that visit, Dr. Morse again documented no change with regard to the prior responses to causation questions, but commented that the complaints for which Claimant sought treatment were not work-related and that Claimant remained at MMI with the same impairment rating. After office visits in May and June, Dr. Morse confirmed no change in status on the DWC-25 forms, and the carrier approved an injection to the left knee.

By October 1, 2015, Claimant was complaining of constant aching pain in the left knee with occasional feelings of instability. Dr. Morse diagnosed tri-compartmental primary osteoarthritis of the left knee and left knee medial meniscus tear, post-surgery. Dr. Morse recommended a left total knee replacement. At deposition, he opined that Claimant's preexisting condition, not the workplace injury, was the MCC of the need for the recommended surgery.

Claimant filed a Petition for Benefits requesting authorization of the left total knee replacement. The E/C filed a timely response denying compensability and asserting that the work place accident was not the MCC of the need for the surgery. In the Pre-Trial Stipulations, the E/C stipulated to the compensability of the left knee meniscus tear only "so long as it is and remains MCC," and denied responsibility for

the preexisting arthritis, among other defenses. Claimant nor the E/C asserted any "affirmative claims or defenses" in the Pre-Trial Stipulation.[1]

Claimant obtained an IME with Dr. Fiore, who opined that the MCC of the need for the left total knee replacement was the work accident even though Claimant had pre-existing degenerative arthritis, as the continued pain was the factor necessitating surgery. Due to the conflict in medical experts, the E/C requested, and the JCC appointed, an expert medical advisor ("EMA") pursuant to section 440.13(9), Florida Statutes. The EMA, Dr. Horan, noted Claimant's similar history of knee problems on the right side and indicated it was "very likely that his left knee and right knee are following the exact same progression of osteoarthritis," but that the recent exacerbation, which was accepted as an acute meniscal tear, "just accelerated his [left] knee for the total knee arthroplasty [replacement]." The EMA concluded that he would "place the majority of the causation... on the pre-existing osteoarthritis." In his deposition, Dr. Horan testified that the viscosupplementation injection performed by Dr. Morse, as well as the recommended use of a brace, were treatments for degenerative joint disease, not a meniscal tear. Dr. Horan predicted Claimant would also require a right total knee replacement in the future, due to the osteoarthritic condition.

---

[1] The Uniform Pre-Trial Stipulation form provides a specific section for the listing of "Affirmative Claims and Defenses."

Prior to the merits hearing, pre-trial memoranda were filed by the parties setting out the claims and defenses. Claimant's memorandum did not raise the "120-Day Rule" under section 440.20(4) or attach case law concerning its application or any mention of waiver. At the merits hearing, Claimant introduced the deposition of the claims adjuster. The adjuster testified that the E/C authorized Dr. Morse to treat Claimant "for his left knee injury." When asked whether there was "any determination made as to what specific condition was compensable," she responded "[w]e authorized his left knee to get treated." She stated further that all treatment provided by Dr. Morse had been authorized, and that all submitted bills had been paid. The adjuster testified that Dr. Morse's October 1, 2015, report was the first information she received indicating some percentage of Claimant's left knee problem was related to a preexisting condition. She later confirmed she received the April 9, 2015, medical report and that she subsequently authorized the viscosupplementation injection recommended in that report.

In closing argument at the final hearing, Claimant specifically argued that the E/C accepted his left knee condition, including the preexisting arthritis, as a compensable workplace injury pursuant to section 440.13(1)(b), Florida Statutes. Citing the definition of "compensable" under this subsection, Claimant relied, in part, on the evidence that the E/C authorized the treatment expressly recommended by Dr. Morse to treat the degenerative arthritis, not the workplace injury of a medial

6

meniscal tear. Based on the E/C's authorization for treatment of the arthritis, Claimant asserted that the E/C had accepted compensability of the arthritis and had the burden of showing a break in causation, which they failed to do. In the alternative, Claimant argued the arthritis could not be considered a contributing cause in any MCC analysis because the condition did not qualify as a "preexisting condition" under section 440.09(1)(b), Florida Statutes.

In response, the E/C asserted that Claimant failed to satisfy his burden regarding MCC with respect to ongoing medical care. Further, regarding section 440.13(1)(b), a break in the causal chain occurred when the E/C's liability fell below fifty percent. In the final order, the JCC unequivocally accepted the EMA's medical opinion that Claimant's preexisting arthritis — not the accidental compensable injury of a meniscal tear — was the MCC of the need for the requested left total knee replacement. Nevertheless, the JCC ultimately concluded that, as a matter of law, the E/C was precluded from raising MCC related defenses because: 1) Claimant's prior arthritic knee condition could not be considered a contributing cause, as it did not qualify as a "preexisting condition" in accordance with case law; and 2) pursuant to "120-Day Rule" of section 440.20(4), the E/C waived the right to deny compensability of the preexisting arthritic condition. This appeal followed.

## Legal Analysis

To the extent an issue turns on resolution of the facts, the standard of review is competent substantial evidence ("CSE"); to the extent it involves an interpretation of law, the standard is *de novo*. <u>Benniefield v. City of Lakeland</u>, 109 So. 3d 1288, 1290 (Fla. 1st DCA 2013).

### *Qualifying Preexisting Conditions*

Once compensability of a work accident is established, an E/C may no longer contest that the accident is the MCC of the injuries. However, an E/C may thereafter challenge the connection between a claimant's need for specific treatment or benefits and the industrial accident. <u>Engler v. Am. Friends of Hebrew Univ.</u>, 18 So. 3d 613, 614 (Fla. 1st DCA 2009); <u>see also</u> <u>City of Pembroke Pines v. Ortagus</u>, 50 So. 3d 31 (Fla. 1st DCA 2010) (holding E/C must pay for treatment as long as compensable condition remains MCC of need for treatment). When a work related injury combines with a preexisting disease or condition to cause or prolong disability or the need for treatment, the E/C must pay benefits "only to the extent that the injury arising out of and in the course of employment is and remains more than 50 percent responsible for the injury as compared to *all other causes* combined and thereafter remains the [MCC] of the disability or need for treatment." § 440.09(1), Fla. Stat. (emphasis added).

Section 440.09(1) does not enumerate "all other causes" for MCC analysis, but subsections (a) and (b) provide some distinct limitations – to qualify the causes must be (1) subsequent injuries, or (2) preexisting injuries and conditions. See Cespedes v. Yellow Transp., Inc, 130 So. 3d 243 (Fla. 1st DCA 2013). As this Court summarized in Cespedes, "under the text of section 440.09(1)(a)-(b), MCC analysis cannot be performed in a vacuum or, particularly, in the absence of competing causes." Id. Thus, MCC has no application unless there is evidence of a competing cause qualifying under one of the designated categories. Here, no evidence was presented regarding subsequent injury. Accordingly, as the JCC correctly noted, the question remaining was whether evidence existed of a qualifying "preexisting injury or condition."[2]

The JCC assumed that, for purposes of 440.09(1)(b), a preexisting condition "must have produced the need for medical care before the accident or caused claimant to have some disability or impairment." The JCC further concluded Claimant's preexisting knee arthritis, while symptomatic as early as 2011, was not a qualifying preexisting condition, because it required no medical treatment or caused disability or impairment *before* the 2013 workplace injury.

---

[2] If the preexisting condition is due to an industrial accident, it does not qualify under section 440.09(1)(b). See Pearson v. Paradise Ford, 951 So. 2d 12 (Fla. 1st DCA 2007); Pizza Hut v. Proctor, 955 So. 2d 637 (Fla. 1st DCA 2007).

This Court previously announced the test to determine whether a preexisting condition qualifies for MCC analysis. See Osceola Cty. Sch. Bd. v. Pabellon-Nieves, 152 So. 3d 733, 734 (Fla. 1st DCA 2014) (clarifying Bysczynski v. United Parcel Servs., Inc., 53 So. 3d 328 (Fla. 1st DCA 2010)). The inquiry is whether the condition independently required treatment either *before or after* the compensable accident. Pabellon-Nieves, 152 So. 3d at 734; Certistaff, Inc. v. Owen, 181 So. 3d 1218, 1221-22 (Fla. 1st DCA 2015) (finding that JCC erred in focusing on whether claimant received physician-provided treatment for shoulder "to the exclusion of other evidence that Claimant was in fact experiencing shoulder pain before the workplace accident and the objective medical evidence of pre-existing shoulder conditions contributing to, if not causing his symptoms"). The test is not limited to whether a claimant was, or recently had been, undergoing physician-provided medical treatment for the preexisting condition before the compensable accident. "It does not matter whether a preexisting condition is 'age-appropriate;' what matters is whether there is medical evidence that it is the major contributing cause of the need for the requested treatment." Pabellon-Nieves, 152 So. 3d at 734.

In Pabellon-Nieves, the JCC appropriately considered, "the nature of the preexisting condition-including the level of treatment necessitated by the preexisting condition prior to the date of the accident, as compared to Claimant's current condition and need for the treatment" after the compensable accident. 152 So. 3d at

10

734. Here, the JCC expressly held that Dr. Morse's treatment on April 9, 2015, was "necessitated *solely* by Claimant's *osteoarthritis* and [was] not necessary because of Claimant's accident." As a result, the osteoarthritis qualifies as a preexisting condition for purposes of an MCC analysis under paragraph 440.09(1)(b), and per the EMA, independently required the medical treatment at issue.

For the above reasons, we find that Claimant's osteoarthritis qualified as a preexisting condition under section 440.09(1)(b), and its consideration in the MCC analysis appropriate.

### *"The 120-Day Rule"*

Section 440.20(4), commonly referred to as the "120-Day Rule," allows a carrier the option of paying and investigating a claim for up to 120 days. Further, a carrier who fails to deny compensability within that 120 days after the initial provision of benefits waives the right to deny compensability, unless material relevant facts could not have been discovered during the 120 day period. § 440.20(4). Once aware of the need for medical benefits for a particular condition or injury, the carrier has three options: pay, pay and investigate within 120 days, or deny. Bynum Transp., Inc. v. Snyder, 765 So. 2d 752 (Fla. 1st DCA 2000); see also Kestel v. City of Cocoa, 840 So. 2d 1141, 1142 (Fla. 1st DCA 2003). A condition or injury may be deemed compensable if the carrier begins payment for that condition or injury and

fails to investigate within the 120 days, or fails to deny compensability within that time period. Kestel, 840 So. 2d at 1142.

The "120-Day Rule" is not necessarily rendered obsolete on the 121st day after the first report of accident and initial installment of benefits. The rule remains viable and is again triggered when, and if, a new condition or injury arises. Snyder, 765 So. 2d at 754; Boyle v. JA Cummings, Inc., 212 So. 3d 1060, 1062-63 (Fla. 1st DCA 2017) (holding JCC erred by excluding adjuster's testimony concerning specific identity of condition accepted as compensable as it related to application of subsection 440.20(4) to preexisting condition); McIntosh v. CVS Pharmacy, 135 So. 3d at 1157, 1159 (Fla. 1st DCA 2014) ("It was of no consequence that compensability [of the claimant's PTSD] was sought long after the date of the accident; the relevant inquiry is whether the E/C denied compensability within 120 days of first providing treatment for the PTSD.").

Here, the EMA's uncontroverted opinions established Claimant's preexisting arthritic condition as the primary — if not the sole — cause of the need for the left knee surgery. Accordingly, Claimant was unable to satisfy his burden of proof regarding the MCC requirements of section 440.09(1). Regardless, the JCC ultimately barred the E/C from raising the MCC defense citing waiver pursuant to the "120-Day Rule." In the order, the JCC applied the analysis discussed in Sierra v. Metropolitan Protective Services, 188 So. 3d 863, 867 (Fla. 1st DCA 2015), to

12

find: (1) the date the E/C first provided the benefits; (2) the specific identity of the injury for which benefits were provided; and (3) whether the E/C timely denied compensability of that injury within the 120 day period immediately following the provision of benefits for that injury. Id. at 867. CSE supports the JCC's subsequent findings that the E/C provided medical treatment in April of 2015, that the treatment was necessitated *solely* by the osteoarthritis (not the accident), and that the E/C failed to deny the compensability of the osteoarthritis within the 120 days following the initial provision of treatment for that condition. However, as Claimant never raised the "120-Day Rule" as a "defense," the JCC's unilateral initiative to apply analysis under Sierra was flawed.

In School District of Hillsborough County v. Dickson, 67 So. 3d 1080 (Fla. 1st DCA 2011), nearly identical issues were addressed. This Court determined that the JCC violated the due process rights of the E/C by *sua sponte* raising waiver under subsection 440.20(4); specifically, by "mischaracterizing section 440.20(4) as 'mandatory' and 'not in the nature of an affirmative defense,' the JCC improperly denied the E/C the opportunity to establish material facts that could be used to prove it did timely deny benefits." Id. at 1083. A claimant's "defense" of waiver to an E/C's ability to deny compensability of an accident or specific injury/condition pursuant to the "120-Day Rule," is an affirmative pleading which must be timely raised and specifically plead.

13

Waiver and estoppel are affirmative defenses which must be plead carefully or forever waived. McKenzie Tank Lines, Inc. v. McCauley, 418 So. 2d 1177, 1180 (Fla. 1st DCA 1982). The party raising affirmative defenses has the burden of pleading and proving them. Id. at 1180. A JCC is not permitted to raise, *sua sponte*, waiver under the "120-Day Rule." Dickson, 67 So. 3d at 1083; see also Fla. Admin. Code R. 60Q-6.113(2)(a),(h).[3] We find no merit to Claimant's argument that waiver was tried by consent due to inferences during closing arguments.

Claimant argues the pretrial stipulation contained the "substance" of the waiver defense under section 440.20(4) and, as such, was properly raised. This Court recently rejected an argument that an issue was "implicitly" raised in a pretrial stipulation. See McFarlane v. Miami-Dade Transit Auth., 42 Fla. L. Weekly D808

---

[3] Fla. Admin. Code R. 60Q-6.113(2)(a), states:

> In pretrial stipulations and at any pretrial hearing, the parties shall:
> (a) State the claims, defenses, and the date of filing of each petition for benefits to be adjudicated at the final hearing. Any claims that are ripe, due, and owing, and all available defenses not raised in the pretrial stipulation are waived unless thereafter amended by the judge for good cause shown...

Fla. Admin. Code R. 60Q-6.113(2)(h) requires, "[a]ny defense raised pursuant to Sections 440.09(4)(a) and 440.105, F.S., and any affirmative defense, must be raised with specificity, detailing the conduct giving rise to the defense, with leave to amend within 10 days. Failure to plead with specificity shall result in the striking of the defense. Any objections/responses to the affirmative defenses must be pled with specificity."

(Fla. 1st DCA April 11, 2017). But, even assuming in light of McFarlane that Florida Administrative Code Rule 60Q-6.113(2)(h) permits an affirmative defense to be raised "in substance," there is no such evidence in this case. The E/C specified in the pretrial stipulation that the preexisting arthritic condition was denied; yet, Claimant made no reference to the condition. Instead, Claimant plead that he was pursuing the claim "as both a specific accident and injury as well as a repetitive and cumulative trauma to Claimant's left knee." The JCC noted that Claimant subsequently abandoned any argument based on repetitive and cumulative trauma. It was not until the trial memorandum that Claimant suggested, for the first time, that he was relying on the compensability of the preexisting condition itself. But, as in McFarlane, the trial memorandum was filed very shortly before the final hearing. Moreover, in the instant case, Claimant never expressly argued at any point that the preexisting condition was compensable pursuant to section 440.20(4).

## Conclusion

We reverse the JCC's determination that the E/C was barred, as a matter of law, from asserting a MCC defense regarding the left total knee replacement. Claimant's preexisting osteoarthritis is a qualifying preexisting condition under section 440.09(1)(b). As an affirmative defense, the "120-Day Rule" pursuant to section 440.20(4), must be timely and specifically plead by a claimant and may not be raised, *sua sponte,* by the JCC. Accordingly, based on the opinions of the EMA

15

that the preexisting osteoarthritis, and not the effects of the work accident, is the MCC of the need for the left total knee replacement, the surgery is not compensable. The final order on appeal is REVERSED.

B.L. THOMAS, C.J., and WETHERELL, J., CONCUR.