778 So.2d 418 (2001)
Lori FRANKLIN, Appellant,
v.
NORTHWEST AIRLINES and Liberty Mutual, Appellees.
No. 1D00-0535.
District Court of Appeal of Florida, First District.
February 2, 2001.
*419 Christopher J. Smith of Yanger & Smith, P.A., Tampa, for Appellant.
James C. Delesie, Sr., of Smith, Clark, Delesie, Bierley, Mueller & Kadyk, Tampa, for Appellees.
BROWNING, J.
Lori Franklin, the claimant in this workers' compensation case, appeals the denial and dismissal of her claim. She contends that the judge of compensation claims (JCC) reversibly erred in finding that the appellees (the employer/carrier) were not estopped from denying compensability due to their failure to comply with certain statutory procedures and timetables. We reverse the dismissal order and remand with instructions to the JCC to enter an order awarding the benefits claimed at the final hearing.
On or about January 19, 1997, the claimant was a 33 year old reservations agent with over nine years' experience at Northwest Airlines. She allegedly suffered an industrial accident on or around that date when, seated at her work space, she leaned down to retrieve something from her purse and, twisting her body around on the ascent, she felt immediate, fairly severe pain and discomfort rippling through her side and back. Prior to this incident, the claimant had a rather long history of back problems, which had required some hospitalization and other treatment.
The claimant testified that she had not reported the alleged industrial accident at the time; in fact, she continued working and completed her work day. A day later, her pain worsened. On February 15, 1997, she filled out a form for family medical leave. Ultimately, she went to an orthopedic surgeon, Dr. Shim, and reported this essential history to him. An MRI revealed degenerative disc disease. Since then, the claimant has received considerable medical care, including a December 1997 lumbar facet joint rhizotomy, which was intended neurologically to desensitize the facet joint.
On April 1, 1997, or about 2 ½ months after the alleged injury, the claimant finally reported the incident as a compensable accident, but the record demonstrates that she has given various dates as the onset of her problems. The employer provided evidence demonstrating that the claimant was not on the job either on January 19, 1997, or on several of the other dates reported as the date of the injury. The JCC found "[i]t is highly likely that the claimant, at some later date, attempted to recreate the date and events of this onset with some difficulty." The claimant testified that she had waited so long to report the incident to her operations manager, Mr. Bechtold, because she had no knowledge of workers' compensation and the proper channels for notification. On the first day of April 1997, she signed an occupational injury/illness report alleging an unknown injury causing back pain. She indicated "mid-Jan. 97" as the time of the incident. The employer filed a first report of injury or illness on April 7, 1997, indicating a low back injury.
The workers' compensation statute relating to time for payment of compensation, and penalties for late payment, states in pertinent part:
(4) If the carrier is uncertain of its obligation to provide benefits or compensation, it may initiate payment without prejudice and without admitting liability. The carrier shall immediately and in good faith commence investigation of the employee's entitlement to benefits under this chapter and shall admit or deny compensability within 120 days after the initial provision of compensation or benefits. Upon commencement of payment, the carrier shall provide written notice to the employee that it has elected to pay all or part of the claim pending further investigation, and that it will advise the employee of claim acceptance or denial within 120 days. A carrier that fails to deny compensability within *420 120 days after the initial provision of benefits or payment of compensation waives the right to deny compensability, unless the carrier can establish material facts relevant to the issue of compensability that it could not have discovered through reasonable investigation within the 120 day period.
§ 440.20(4), Fla. Stat. (1995).
Upon receiving the notice-of-injury form, the employer/carrier authorized medical treatment from early May 1997 at least through March 18, 1998, including authorization of anesthesiologist/pain management specialist Dr. Kabaria, an orthopedic clinic, and a physical therapy center. Compensation benefits for total temporary disability (TTD) or total permanent disability (TPD) were paid from February 4, 1997, through March 17, 1998. Permanent impairment benefits were paid from March 9, 1998, through June 22, 1998, based on Dr. Kabaria's conclusion that the claimant had reached maximum medical improvement on March 18, 1998. Mileage payments were made from February 14, 1997, through January 1999.
As early as April 9, 1997, the carrier's adjustor, Ms. Regan, acknowledged that the claimant had pre-existing back problems. While accepting the injuries as compensable, the adjustor felt there could be some question about compensability. The senior case manager noted that the employer/carrier might have a defense under the statute requiring an injured employee to give timely notice of an industrial accident. The employer/carrier never sent the "120 day letter" contemplated in section 440.20(4), Florida Statutes (1995). Authorization of medical services/treatment was denied as of September 22, 1998, when the employer/carrier announced, for the very first time, their position that the alleged injury was not causally related to employment and was not compensable. September 1998 is well beyond the 120 day period following "the initial provision of compensation or benefits."
On January 22, 1999, the claimant signed a petition for benefits stating that the date of accident was February 4, 1997, which date appeared in subsequent depositions and pleadings until, at the final hearing, the date was amended to January 19, 1997. The petition was filed on March 22, 1999. In this and/or subsequent petitions, claims were made for 1) reimbursement of $60.00 for a lumbar support pillow; 2) medical treatment in the nature of authorization of Dr. Kabaria and another anesthesiologist/pain management specialist, Dr. Derasari; 3) authorization of neuromuscular therapy and a four-channel muscle stimulator; 4) $30.27 underpaid for transportation expenses; 5) TTD benefits; 6) interest and penalties on any unpaid benefits; and 7) costs and attorney's fees.
The workers' compensation statute setting forth procedures for resolving benefit disputes states in pertinent part:
(8) Within 14 days after receipt of a petition for benefits by certified mail, the carrier must either pay the requested benefits without prejudice to its right to deny within 120 days from receipt of the petition or file a notice of denial with the division. The carrier must list all benefits requested but not paid and explain its justification for nonpayment in the notice of denial. A carrier that does not deny compensability in accordance with s. 440.20(4) is deemed to have accepted the employee's injuries as compensable, unless it can establish material facts relevant to the issue that could not have been discovered through reasonable investigation within the 120 day period. The carrier shall provide copies of the notice to the filing party, employer, and claimant by certified mail.
§ 440.192(8), Fla. Stat. (1995).
Notices of denial were prepared on February 24, 1999, and March 4, 1999, regarding the muscle stimulator on the ground that the medical treatment was not causally related to the industrial accident. A March 23, 1999, notice of denial addressed *421 ongoing treatment with Drs. Kabaria and Derasari, the lumbar pillow, and TTD benefits. The employer/carrier defended the claim on the grounds that the employment was not the major contributing cause of, or even causally related to, the claimant's need for medical care; that the claimant's condition is the natural progression of a pre-existing condition; that she did not suffer injury by accident arising out of and in the course of work for the employer; and that the employer/carrier have been prejudiced by the claimant's failure to provide timely notice of her alleged injury. Additional notices of denial were prepared on April 13, 1999, and May 6, 1999.
In his order, the JCC found that the claimant had a long history of pre-existing back problems; that her injury did not arise out of her employment; and that employment was not the major contributing cause of her disability or need for treatment. The incident was found not compensable for essentially the same reasons supporting the dismissal of the claim in Southern Bell Tel. & Tel. Co. v. McCook, 355 So.2d 1166 (Fla.1977). The JCC rejected the claimant's argument that even if the claim was not compensable, the employer/carrier were estopped by the effect of the "120 day rule" to deny compensability of the injury pursuant to section 440.20(4), Florida Statutes (1995), or to deny it under the general rules of estoppel.
Competent substantial evidence in the record supports the JCC's conclusions that the claimant lacked candor in downplaying the nature and severity of her prior back problems and in reporting various dates as the time of occurrence of her workplace injury. For instance, the employer's reservations office manager testified that employment attendance records reflect that the claimant was not at work on the various dates in January 1997 when the industrial accident allegedly happened. Given the evidence relating to the claimant's history of back problems and her lack of credibility, the JCC correctly cited McCook, 355 So.2d at 1166, and found that the injury did not arise out of the employment and that employment was not the major contributing cause of the disability. On these grounds, the injury was correctly found not compensable. However, under the statutory scheme requiring claimants to report their industrial accidents and employers/carriers to respond according to several options, the resolution of the claim is subject to further analysis. Thus, the claimant's right to relief hinges entirely on her argument that the employer/carrier were estopped from denying compensability due to their failure to comply fully with the statutory procedures and timetables.
The record establishes that no later than early April 1997, the claimant reported a mid-January 1997 work-related injury. At that point when the employer/carrier recognized, or reasonably should have become aware, that the claimant had medical needs, the employer/carrier had three options: to pay for them; to pay and investigate in accordance with section 440.20(4), Florida Statutes (1995); or to deny compensability. See Bynum Transport, Inc. v. Snyder, 765 So.2d 752, 754 (Fla. 1st DCA 2000). If the employer/carrier had any reservations about the compensability of the claimant's reported incident, as the record suggests they did, they could have investigated within the 120 day period provided in the statute. The carrier's team manager (Ms. Mensching), who was assigned the claimant's file, testified that as early as April 1997, shortly after the workplace injury was reported, the adjustor expressed concerns that the claim might not be compensable and that the employer/carrier might have a defense under the "timely reporting" statute. The senior case manager (Ms. Williams) expressed similar doubts about the viability of the claim. The employer/carrier accepted *422 the claim as compensable and commenced providing payment of medical treatment bills, compensation benefits, and mileage. By initiating payment, i.e., "after the initial provision of compensation benefits," the employer/carrier became obligated immediately and in good faith to "commence investigation of the employee's entitlement to benefits under this chapter." See § 440.20(4), Fla. Stat. (1995). The language in subsection (4) states that a carrier "shall admit or deny compensability within 120 days after the initial provision of compensation or benefits." The employer/carrier failed to act pursuant to the options permitted under the statute, and they never sent a "120 day letter." Instead, they waited 17 months after receiving notice of the injury to deny compensability. Having failed to deny compensability within the time period set forth in the statute, the employer/carrier waived the right and are deemed to have accepted compensability. See Snyder, 765 So.2d at 754.
The statutory exception to the waiver, which contemplates the discovery of "material facts relevant to the issue of compensability" that could not have been "discovered through reasonable investigation within the 120 day period," is inapplicable in the case at bar. The employer/carrier do not contend otherwise. As to the employer/carrier's suggestion that they were hampered in their investigation by the claimant's reporting various dates as the date of injury, we conclude that inconsistencies of this sort are the very kind of "red flags" that should have prompted a timely, thorough, good-faith investigation. Having failed to conduct such an investigation, the employer/carrier are now precluded by statute from complaining about the lack of reliable information about the claimant's injuries.
We REVERSE the JCC's order of denial and dismissal, and REMAND with instructions to the JCC to enter an order awarding the benefits claimed at the final hearing.
BOOTH and KAHN, JJ., concur.