870 So.2d 144 (2004)
Lois HUTCHINSON, Appellant/Cross-Appellee,
v.
LYKES SMITHFIELD PACKING and Gallagher Bassett Services, Inc., and Travelers Property & Casualty, Appellees/Cross-Appellants.
No. 1D02-2622.
District Court of Appeal of Florida, First District.
January 8, 2004.
Manuel Franco, Tampa; and Bill McCabe, Longwood, for Appellant/Cross-Appellee.
*145 R.G. McCormick, Jr., of The Bleakley Law Firm, Tampa, for Appellees/Cross-Appellants.
BROWNING, J.
The claimant, Lois Hutchinson, appeals a final order of the Judge of Compensation Claims (JCC) finding that Hutchinson suffered only a temporary aggravation of a pre-existing condition and awarding medical and temporary indemnity benefits only through July 31, 2000 (the date of maximum medical improvement). Appellees, the Employer/Carrier, cross-appeal the final order. Concluding that Employer/Carrier's failure to comply with the clear requirements of section 440.20(4), Florida Statutes (2000), waived their right to challenge compensability of Hutchinson's pulmonary condition, we reverse the final order, insofar as it limits the waiver of compensability, and remand for further proceedings. Travelers Ins. Co. v. Collins, 825 So.2d 451 (Fla. 1st DCA 2002); Franklin v. Northwest Airlines, 778 So.2d 418 (Fla. 1st DCA 2001).
In July 1967, Hutchinson commenced working for Employer assembling corrugated cardboard boxes. Hutchinson reported that at the workplace on May 11, 2000, a loosened vacuum exhaust hose emitted thick, oily and black smoke, filling her work area for 15-25 minutes. Complaining of a sore throat and difficulty breathing, she went into South Florida Baptist Hospital on May 13, 2000. Hutchinson, who was in her early 60s, did not return to work after her hospitalization. She was accepted as totally disabled by the Social Security Administration in October 2000.
According to the deposition testimony of Miguel Aguila, who was the adjuster in charge of Hutchinson's file, a Notice of Injury for the May 11, 2000, industrial accident was received on May 16, 2000. A "field case nurse" was assigned to investigate the compensability of Hutchinson's claim. In a deposition, Elaine Quailey, who is a registered nurse, testified that pursuant to a contract with the Carrier, her then-employer had designated her as the certified nurse/case manager of Hutchinson's claim. Quailey testified that after reviewing Hutchinson's medical chart___ which showed an admitting diagnosis of an exacerbation of chronic obstructive pulmonary disease (COPD)___she visited Hutchinson at the hospital on or around May 17, 2000, and obtained a history. At that point, Quailey determined that Employer/Carrier would be responsible only for the "acute exacerbation," i.e., Employer/Carrier would get Hutchinson back to her pre-injury status, which was chronic bronchitis. Hutchinson told Quailey that she had never been told that she had COPD. While at the hospital, Quailey told Hutchinson that Employer/Carrier would be taking care of only the exacerbation, i.e., hospital care, and that Hutchinson's private health insurance carrier would be taking over afterwards. In any event, Employer/Carrier paid the bill at South Florida Baptist Hospital. Hutchinson's medical records state that she was a long-time heavy cigarette smoker. According to Aguila, Quailey informed him about a possible issue relating to compensability and a pre-existing condition.
Dr. Ackerman, a specialist in pulmonary diseases, critical care, and internal medicine, became Hutchinson's primary treating physician soon after her hospitalization. Believing that her condition was caused by her industrial accident, Hutchinson wanted a second medical opinion. Quailey set up a June 26, 2000, evaluation by authorized physician Dr. Goldstein, a specialist in internal and pulmonary medicine, whom Hutchinson chose from a list of specialists. Quailey asked Dr. Goldstein to *146 determine whether Hutchinson's COPD pre-existed the May 11, 2000, industrial accident, and if so, whether the industrial accident caused a temporary or permanent aggravation of the condition. As Quailey continued to correspond with Dr. Goldstein during Summer and Fall 2000 regarding Employer/Carrier's concerns, the deadline in section 440.20(4), Florida Statutes (2000), for Employer/Carrier to act passed.
According to that specific statutory provision:
(4) If the carrier is uncertain of its obligation to provide benefits or compensation, it may initiate payment without prejudice and without admitting liability. The carrier shall immediately and in good faith commence investigation of the employee's entitlement to benefits under this chapter and shall admit or deny compensability within 120 days after the initial provision of compensation or benefits. Upon commencement of payment, the carrier shall provide written notice to the employee that it has elected to pay all or part of the claim pending further investigation, and that it will advise the employee of claim acceptance or denial within 120 days. A carrier that fails to deny compensability within 120 days after the initial provision of benefits or payment of compensation waives the right to deny compensability, unless the carrier can establish material facts relevant to the issue of compensability that it could not have discovered through reasonable investigation within the 120-day period.
Employer/Carrier presented no evidence that a 120-day written notice was ever sent to Hutchinson advising her that Employer/Carrier had elected to provide benefits but were reserving their right to investigate, and possibly later deny, the claim. Employer/Carrier's records indicate that a Notice of Denial was not filed until November 20, 2000, just over six months after the initial provision of benefits in May 2000. Under these circumstances, having failed to provide a timely denial of compensability within the statutory 120-day "pay and investigate" period, Employer/Carrier waived the right to deny compensability of Hutchinson's condition. See Collins, 825 So.2d at 451; Franklin, 778 So.2d at 418 (holding that by waiting 17 months after receiving notice of claimant's workplace injury to deny compensability, employer/carrier waived right to relief and were deemed to have accepted compensability). In fact, the JCC correctly found the May 11, 2000, industrial accident is compensable based on Employer/Carrier's lack of timely compliance with section 440.20(4), Florida Statutes (2000), and on Employer/Carrier's failure to satisfy their burden to establish material facts relevant to the compensability issue that could not have been discovered through reasonable investigation within the 120-day period. See Garner v. Clay County Dist. Sch. Bd., 798 So.2d 821 (Fla. 1st DCA 2001).
Hutchinson contends that despite finding a waiver of compensability, the JCC erred in limiting Employer/Carrier's responsibility to just the temporary aggravation of Hutchinson's COPD disorder. Hutchinson is correct. See Collins, 825 So.2d at 451. In Collins, the claimant was injured in a workplace accident in January 1996 when he was struck by a pallet being moved by a forklift. The employer/carrier authorized treatment for the injury to Collins' right foot resulting from the accident; later, a physician was authorized to treat Collins' lower back pain. After initially providing treatment of Collins' lower back, the employer/carrier denied the compensability of the lower back condition. Collins petitioned for additional treatment of his lower back. Id. at 451-52. *147 The JCC found that because the industrial accident was not the major contributing cause of Collins' lower back condition, the claim was not compensable. Nevertheless, the JCC determined that the employer/carrier had waived the right to deny compensability of the lower back condition by failing to deny compensability within the 120-day statutory period after commencing payment of compensation. Id. at 452. Competent substantial evidence in Collins disclosed that the report of a doctor authorized to treat the claimant's back had placed the employer/carrier on notice that the lower back condition comprised a pre-existing degenerative disc condition as well as an aggravation. Id. The JCC's ruling in Collins' favor was affirmed. Id.
Like the claimant in Collins, Hutchinson had a pre-existing (pulmonary) condition that was aggravated or exacerbated by her May 11, 2000, industrial accident. Within days of Hutchinson's industrial accident and during her hospitalization in mid-May 2000, Employer/Carrier became aware of Hutchinson's medical records and history, including her well-documented pre-existing COPD condition. Employer/Carrier initially provided benefits and failed to deny the compensability of Hutchinson's COPD disorder in the manner provided by statute and within the 120-day statutory period. Aguila testified that the medical benefits payout ledger indicated that Employer/Carrier had made payments in late December 2000 and early January 2001 for services provided to Hutchinson during the period from August through November 2000. The last service was provided after Employer/Carrier filed the Notice of Denial.
Hutchinson's argument is bolstered by our holding in Franklin, 778 So.2d at 418. The claimant, Franklin, had a long history of back problems that required hospitalization and treatment. Subsequently, in January 1997, she sustained additional injuries to her back in a workplace accident. An MRI taken one month later revealed degenerative disc disease. In April 1997, Franklin reported the incident as a compensable accident. Id. at 419. Upon receiving the Notice of Injury form, the employer/carrier authorized medical treatment for Franklin from May 1997 through at least March 1998, and benefits were paid from February 1997 through March 1998. Id. at 420. As early as April 1997, the carrier's adjustor acknowledged that Franklin had pre-existing back problems. While accepting Franklin's injuries as compensable then, the adjustor recognized there could be an issue regarding compensability. However, the authorization of medical services/treatment was not denied until September 1998 (well beyond 120 days after the initial provision of compensation or benefits), when the employer/carrier announced for the first time that the alleged injury was not causally related to employment and was not compensable. Id. The JCC found that Franklin had a long history of pre-existing back problems; that her injury did not arise out of her employment; and that her employment was not the major contributing cause of her disability or need for treatment. The JCC rejected Franklin's argument that even if the claim was not compensable, the employer/carrier were estopped under the 120-day rule from denying compensability. The claim was denied and dismissed. Id. at 419 & 421. We reversed and remanded with instructions to the JCC to enter an order awarding Franklin the benefits claimed at the final hearing. Id. at 422.
As in Franklin, once Employer/Carrier knew, or reasonably should have known, that Hutchinson had medical needs, three options were available: 1) pay for those medical needs; 2) pay and investigate according *148 to the terms of section 440.20(4), Florida Statutes (2000); or 3) deny compensability. Id. at 421; Bynum Transp., Inc. v. Snyder, 765 So.2d 752, 754 (Fla. 1st DCA 2000). If Employer/Carrier had any concerns about the compensability of Hutchinson's reported incident, as Quailey's testimony clearly indicates they did soon after the industrial accident, they could have investigated within the statutory 120-day period. Just as the employer/carrier's failure to comply with the statutory provisions in Franklin waived the right to challenge compensability of Franklin's back problems (some of which pre-existed the industrial accident), Employer/Carrier's lack of compliance with the statute waived their right to challenge the compensability of Hutchinson's COPD condition. Employer/Carrier are deemed to have accepted compensability of Hutchinson's pulmonary condition. Franklin, 778 So.2d at 422.
On the authority of Collins and Franklin, we AFFIRM that portion of the final order finding that Employer/Carrier waived compensability by failing to satisfy the requirements of section 440.20(4), Florida Statutes (2000); REVERSE that part of the order limiting the waiver of compensability; and REMAND for further proceedings consistent with this opinion and the pertinent cases cited herein.
BARFIELD and WEBSTER, JJ., CONCUR.