867 So.2d 542 (2004)
Mary BUSSEY, Appellant,
v.
WAL-MART STORE # 725 and Integrated Administrators, Appellees.
No. 1D02-4804.
District Court of Appeal of Florida, First District.
February 27, 2004.
*543 Nora Leto of Kaylor & Kaylor, Winter Haven, for Appellant.
Thomas P. Vecchio of Ross, Vecchio, & Trussell, P.A., Lakeland, for Appellees.
KAHN, J.
In this case we are asked to decide whether failure of an employer/carrier (E/C) to respond within 134 days to a section 440.192(8) petition for workers' compensation benefits waives the E/C's right to later contest the injured employee's entitlement to particular requested benefits. We affirm because no such waiver occurred.
Claimant, Mary Bussey, worked for Wal-Mart as a cashier. On November 17, 2001, claimant fell at work and broke her wrist while trying to avoid a collision with a small child. Instead of immediately reporting the injury, Bussey completed her day's work and sought treatment at a local emergency room the next day. Bussey told the emergency room personnel that she had tripped over her dog while at home. She later admitted that she chose this course of action because she feared a post work-related accident urinalysis would indicate marijuana use. On November 20, 2001, Wal-Mart's manager learned that Bussey's injury occurred on the job. She instructed Bussey to go to Wal-Mart's designated treatment provider. Bussey complied and submitted to a urinalysis. On November 26, 2001, Wal-Mart terminated Bussey because the results of her urinalysis confirmed marijuana use. Wal-Mart did not attempt to invoke the provisions of the drug-free workplace program outlined in section 440.102 and continued to pay for claimant's medical expenses after her termination.
On February 1, 2002, the claimant filed a petition requesting, among other things, payment of temporary partial disability (TPD) benefits. The E/C did not deny or otherwise respond to the petition. The parties agreed during the final hearing held on September 27, 2002, that Bussey's entitlement to TPD benefits was the only disputed issue remaining. After the hearing, the Judge of Compensation Claims issued a final order denying claimant's entitlement to TPD benefits. The JCC found that Bussey's lost earnings resulted from the termination for drug use rather than the work-related injury. He further found that the E/C's failure to respond to claimant's petition for benefits did not amount to a waiver of defenses under section 440.192(8) or section 440.20(4), Florida Statutes.
On appeal, claimant argues that the E/C's failure to deny the petition for benefits mandates payment of the requested TPD benefits. Resolution of the issue requires a review of this court's previous decisions construing section 440.192(8) and 440.20(4). We focus upon the interpretation of statutory language relating to the "pay and investigate" rule and the effect of an E/C's failure to file a denial of a section 440.192(8) petition for benefits.
Section 440.192 outlines the procedure for resolving benefit disputes. By its *544 terms, "any employee who has not received a benefit to which the employee believes she or he is entitled" may file a petition for benefits with the Office of the Judges of Compensation Claims. § 440.192(1), Fla. Stat. (2002). Upon receiving the petition for benefits, an E/C has 14 days to "either pay the requested benefits without prejudice to its right to deny within 120 days from receipt of the petition or file a response to the petition.... A carrier that does not deny compensability in accordance with s. 440.20(4) is deemed to have accepted the employee's injuries as compensable." § 440.192(8), Fla. Stat. (2002). In this case, claimant argues that because the E/C failed to file a denial or response in either the 14 days after receipt of the petition or the 120 days after that period, it should not be allowed to contest her entitlement to TPD benefits. We reject this argument.
In Waffle House v. Hutchinson, we addressed the effect of failure to respond to a petition for benefits within 14 days of receipt. 673 So.2d 883 (Fla. 1st DCA 1996). There, we held that such a failure resulted in a procedural default in which the E/C "was properly deemed by operation of the statute to have accepted the claim as compensable." Id. at 885. We have since expressly overruled our holding in Waffle House.
In North River Insurance Co. v. Wuelling, this court, sitting en banc, reversed an order holding that an E/C's failure to deny compensability within 14 days barred assertion of a statute of limitations defense against a claim for benefits. 683 So.2d 1090 (Fla. 1st DCA 1996). We analyzed the interrelationship between section 440.192(8) and section 440.20(4). Section 440.20(4) provides in part:
If the carrier is uncertain of its obligation to provide benefits or compensation, it may initiate payment without prejudice and without admitting liability. The carrier shall immediately and in good faith commence investigation of the employee's entitlement to benefits under this chapter and shall admit or deny compensability within 120 days after the initial provision of compensation or benefits as required under subsection (2) or s. 440.192(8).... A carrier that fails to deny compensability within 120 days after the initial provision of benefits or payment of compensation as required under subsection (2) or s. 440.192(8) waives the right to deny compensability.
We noted, "the third sentence of 440.192(8) which reads: `A carrier that does not deny compensability in accordance with s. 440.20(4) is deemed to have accepted the employee's injuries as compensable ...' refers to and is a reiteration of the waiver provision of 440.20(4) as it relates to the opportunity to pay and investigate." Wuelling, 683 So.2d at 1092. We concluded that neither section 440.192 nor section 440.20 imposed a penalty for failing to timely deny a petition for benefits or barred an E/C from defenses to a petition for benefits. Id. Accordingly, we receded from our contrary holding in Waffle House. Id.
Thereafter, we had occasion to comment further upon the effect of an E/C's failure to respond to a petition for benefits within 14 days. In Russell Corp. v. Brooks, we reiterated our disapproval of Waffle House and stated that an E/C's failure to respond to a petition for benefits operates "not as an admission of compensability but as a denial of every allegation in the petition for benefits." 698 So.2d 1334, 1335 (Fla. 1st DCA 1997). From that point forward, we have consistently adhered to this interpretation. See, e.g., Mitchell v. Sunshine Cos., 850 So.2d 632, 633 (Fla. 1st DCA 2003) (noting that a failure to timely respond is the procedural equivalent of a *545 notice of denial); Denestan v. Miami-Dade County, 789 So.2d 515, 516 (Fla. 1st DCA 2001) (holding that the late filing of notice of denial did not bar E/C from asserting statute of limitations defense); McDonald's Rest. # 7160 v. Montes, 736 So.2d 768, 769 (Fla. 1st DCA 1999) (noting that a "carrier that fails to respond to a claimant's petition for benefits within 14 days is deemed to have denied the claim"); Alachua County Bd. of County Comm'rs v. Starling, 699 So.2d 310, 311 (Fla. 1st DCA 1997) (holding that failure to respond does not amount to a procedural default). Thus, our precedent establishes that the E/C's decision not to respond within 14 days operates as a denial. Bussey, nevertheless, places a great deal of emphasis upon the language in section 440.192(8) referring to the 120-day "pay and investigate" period outlined in section 440.20(4). We agree that an E/C opting to pay benefits while reserving the right to deny compensability pursuant to section 440.20(4) must deny within 120 days or waive the right to challenge compensability. Here, however, the E/C did not invoke the pay and investigate option.
The 120-day period becomes relevant only when an E/C has elected to pursue the "pay and investigate" option. Section 440.20(4) applies to a carrier that is "uncertain of its obligation to provide all benefits or compensation" and gives the E/C an option to pay benefits while reserving the right to later deny compensability after investigation. See Wuelling, 683 So.2d at 1092 (finding that the "deemed compensable" language in section 440.192(8) "refers to and is a reiteration of the waiver provision of 440.20(4) as it relates to the opportunity to pay and investigate" (emphasis added)). Here, the E/C was not uncertain and needed no investigation because Wal-Mart knew it had discharged claimant for drug use. As a result, the 120-day period was never triggered in this case.
Under section 440.20(4), the 120-day period is measured from the "initial provision of benefits or payment of compensation as required under ... s.440.192(8)." Here, claimant filed her petition for benefits pursuant to section 440.192(8) and the E/C made no payments in response to that petition. Wal-Mart never denied compensability, but by operation of law, denied Bussey's right to temporary partial disability. A claim for temporary partial disability, temporary total disability, permanent total disability, or impairment benefits may well, as in this case, raise questions quite different from the question of compensability of an accident. We do not read "entitlement to benefits" to mean the same as "compensability." Section 440.20(1)(a) directly recognizes that a carrier may deny "compensability or entitlement to benefits." (emphasis added). See Wuelling, 683 So.2d at 1092 (noting that compensability and entitlement to benefits are separate concepts, and that the last sentence of section 440.20(4) refers to "the issue of compensability" indicating a distinction from other concepts). Bussey's temporary partial disability claim raises questions not concerning the compensability of her accident, but concerning the causal relationship between her injury and her lost earnings.
The purpose of the 120-day limit is to ensure that an E/C complies with the mandate of section 440.20(4) to "immediately and in good faith commence investigation of the employee's entitlement to benefits." Our interpretation is consistent with the legislative goal of speedy resolution of claims and protects a claimant from prolonged periods of uncertainty regarding the E/C's position on the claim's compensability.
The dissent would require further briefs on an issue never before even remotely *546 hinted at in this case. At the short hearing below, the only issue involved application of section 420.20(4). As stated by counsel for Bussey:
MS. LETO: This is a very simple, and yet, at the same time, very complicated case. There's only justit's just one issue. And that issue is a legal issue. I don't think the facts in this case are really in dispute.
The only issue for this Court to decide, I believe, is thatis whether the 120-day rule applies in this case, and renders Ms. Bussey's claim for temporary partial disability to be allowable because the employer/carrier failed to deny the claim within 120 days."
(emphasis added). In the order on review, the judge acknowledged that no facts were in dispute, and the only "dispute in this case centers around whether the 120-day `pay-and-investigate' rule as set forth in § 440.24(4), Florida Statutes, bars the Employer/Carrier from controverting entitlement to TPD." Finally, in her brief, Bussey does not suggest the argument made by the dissenting opinion. Instead, in the only issue on appeal, Bussey argues that section 440.20(4) "requires a payment of benefits not specifically controverted within 120 days of the request for benefits." Nothing in this case supports even an inference that Bussey attempted to avoid the E/C's defense with any evidence. Thus, no record exists to support the argument Judge Ervin would make on Bussey's behalf.
Accordingly, we find that an E/C which neither denies a petition for benefits within 14 days of receipt nor elects to pay and investigate pursuant to section 440.20(4) is placed in the "identical position as the E/C that files a notice of denial." Russell Corp., 698 So.2d at 1336 (Ervin, J., concurring). Therefore, the order of the JCC is AFFIRMED.
BOOTH, J., concurs; ERVIN, J., concurs and dissents w/ opinion.
ERVIN, J., concurring and dissenting.
I agree with the majority's conclusion that the payment of claimant's medical expenses for a period of time in excess of 120 days from the initial provision of same does not obligate the employer/carrier (E/C) to pay as well claimant's temporary partial disability (TPD) benefits. The clearly expressed language of sections 440.192(8) and 440.20(4), Florida Statutes (2001), when considered in pari materia, provides that an employer's waiver of its right to contest applies only to the compensability of an alleged injury, not to every claimed benefit requested. The burden remains on the claimant to establish whether a covered injury causes a change in employment status that entitles him or her to benefits. See Thompson v. City of Jacksonville, 654 So.2d 1178, 1180 (Fla. 1st DCA 1995). Obviously, the occurrence of a compensable injury does not necessarily mean that claimant has suffered a disability, meaning an "incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury." § 440.02(12), Fla. Stat. (2001) (emphasis added). Therefore, claimant must prove that her compensable injury caused a loss in her wage-earning capacity.
The judge's order, did not, however, simply reject the claimant's section 440.20(4) waiver argument. It specifically addressed the E/C's defense that claimant was not entitled to indemnity benefits because claimant was terminated from her employment for reasons unrelated to her industrial injury, i.e., her positive post-accident drug test, and if it had not been for this violation of the employer's policy, *547 work would have been available to her within her assigned medical restrictions. As a consequence, the E/C maintained, claimant failed in her burden to establish a causal connection between the injury and loss of earning capacity after termination.
Although it is true, as observed in the majority's opinion, the judge's order recited that the parties' dispute "centers around whether the 120-day `pay-and-investigate' rule ... bars the Employer/Carrier from controverting entitlement to TPD," the order also inconsistently stated:
Based on the foregoing,[[1]] and based on explanations and stipulations of counsel, the primary issue for the Court's determination at the time of the Final Hearing was the Claimant's entitlement to TPD. The Claimant asserts that she is entitled to TPD for all times after 11/17/01 [the date of her industrial injury] because she was not working and therefore suffered a reduction in wages/earnings. The Employer/Carrier asserts that the Claimant is not entitled to TPD because Wal-mart could have offered her employment within her physical restrictions, but her termination for cause (the positive post-accident drug test) precludes any entitlement to TPD.
(Emphasis added.) At the conclusion of the hearing, the JCC denied the claim for TPD for the specific reason that claimant's misconduct was the sole cause of her wage loss.
The majority's opinion obviously affirms not only the JCC's rejection of claimant's default argument, but the judge's acceptance of the E/C's defense to the request for TPD benefits. Appellant did not raise the latter determination as an issue on appeal. Although I am well aware of the rule requiring preservation of an issue as a precondition to our prerogative to consider an issue on appeal, there is, nevertheless, a very narrow exception to this rule, which recognizes that once an appellate court assumes jurisdiction over an appeal, it may, if it decides it necessary to do so, consider any issue that could affect the appeal. See Cantor v. Davis, 489 So.2d 18, 20 (Fla.1986); Dralus v. Dralus, 627 So.2d 505, 508-09 (Fla. 2d DCA 1993). The case at bar is an appropriate case for the application of the exception in that if we do not address the reason the JCC gave for denying the TPD claim, i.e., claimant's misconduct, a possible erroneous conclusion may bar a disabled employee from the indemnity benefits to which she might be entitled if the issue were properly before us.
It appears to me, without the benefit of further briefing, that the JCC incorrectly focused on the fact that claimant's misconduct in using drugs resulted in her termination from employment, and concluded therefrom that this was the sole cause of her loss of wages, without explicitly deciding whether the industrial injury may have independently contributed to her wage loss. The rule is well established that once evidence is submitted showing that a claimant was terminated from employment for reasons unrelated to the work-related accident, the judge is required to decide whether the claimant satisfied her burden of establishing a causal connection between the injury and loss of earning capacity after termination. See Stewart v. CRS Rinker Materials Corp., 855 So.2d 1173, 1178 (Fla. 1st DCA 2003); Jefferson v. Wayne Dalton Corp., 793 So.2d 1081, 1084 (Fla. 1st DCA 2001). The required nexus can only "be determined by the JCC upon *548 a consideration of the totality of the circumstances." Stewart, 855 So.2d at 1177 (emphasis added). I am unable to discern from my review of the order whether the judge, in denying the requested benefits, took into consideration the above rules.
Substantial case law permits this court to direct the parties to furnish it with additional briefing on an unraised issue. For example, in Department of Health and Rehabilitative Services v. Lee, 665 So.2d 304, 305 (Fla. 1st DCA 1995), this court decided the case, after further briefing, on an issue that the parties had not initially briefed, i.e., that of sovereign immunity. The opinion recited that notwithstanding the failure of the parties to address the issue, it had been raised at the trial level, and it could therefore properly be considered on appeal. Id. at 305, n.3.
Under the circumstances, I am not prepared to join the majority in affirming the order in its entirety without additional briefing from the parties on the question whether claimant may, despite her termination from employment for reasons unconnected with her compensable injury, otherwise be entitled to indemnity benefits for the reason that the industrial injury may have independently contributed to her loss of earning capacity after termination.
NOTES
[1] The preceding paragraph of the order stated, among other things, the E/C's position that claimant had been provided all benefits which she was entitled, and, in particular, it disputed her entitlement to TPD benefits.