PER CURIAM.
In this workers’ compensation appeal, Claimant argues that the Judge of Compensation Claims (JCC) erred when he (1) failed to award a statutory attorney’s fee for successful prosecution of a medical benefit, which was resolved prior to trial; (2) failed to find that the Employer/Carrier (E/C) had waived the right to deny com-pensability of his post-traumatic stress disorder (PTSD); and (3) rejected Claimant’s Daubert objection to medical opinion testimony as “inappropriately preserved.” For the reasons discussed below, we modify the appealed order with regard to the attorney’s fee issue. We reverse and remand the second issue because it is unclear why the JCC rejected Claimant’s waiver argument based on the 120-day “pay and investigate” rule under subsection 440.20(4), Florida Statutes (2011). Finally, we affirm the third issue on appeal without further discussion, because the record does not demonstrate that the JCC abused his discretion with respect to the Claimant’s Daubert-related objection.

Facts

On April 1, 2012, Claimant was working as a security guard when he was attacked by a knife-wielding assailant. Claimant’s physical injuries were minor and he was treated the next day at the emergency room (ER) for a laceration (abrasion) to the left wrist and finger, and complaints of neck and low back pain. When discharged, Claimant was advised to follow up with two named doctors, one of whom was either a psychologist or psychiatrist. The E/C subsequently accepted compensability of the workplace accident, requested records from the ER, and sent Claimant the standard workers’ compensation informational letters; no further action was taken at that time.
Upon his return to work approximately one week after the workplace accident, Claimant requested, and was eventually allowed, to transfer to another location to get away from the place where he was attacked. Within the next few months, Claimant was involved in two non-work-related motor vehicle accidents (MVAs). The first MVA resulted in minor injuries; however, in the second MVA on July 23, 2012, Claimant sustained severe injuries to his right shoulder when the motor scooter he was riding was struck by a car in a hit- and-run. As a result of the second MVA, Claimant underwent surgical implantation of a metal rod in the right shoulder. He did not return to work after the second MVA.
In August 2012, Claimant filed a petition for benefits (PFB) seeking medical care. The E/C eventually authorized appointments to take place in January 2013, with Dr. Reyes, orthopedic surgeon, and Dr. Segal, psychiatrist. In the meantime, *865 Claimant received unauthorized psychiatric treatment through Medicaid for complaints of anxiety and depression that he attributed to the physical assault of his workplace accident as exacerbated - by his later MVA. Prior to the authorized medical appointments in January 2013, • Claimant was deposed by the E/C and revealed information about his history of psychiatric problems in Cuba, his post-accident MVAs; and his recent unauthorized psychiatric care obtained through Medicaid.
Claimant was first examined by Dr. Se-gal, the authorized psychiatrist, on January 24, 2013. Based on Claimant’s complaints of anxiety and nightmares about being stabbed, Dr. Segal diagnosed PTSD, prescribed medication, and recommended weekly psychotherapy. Dr. Segal also completed and signed a DWC-25 reporting form on January 24, 2013, which indicated that there was no preexisting condition and, that the workplace injury was the major contributing cause (MCC) of the psychiatric injury/illness in question. Claimant did not show ⅛ his follow-up appointment with Dr. Segal scheduled for February 21, 2013. By that time, Claimant had been seen by Dr. Reyes, the authorized orthopedic surgeon, who had placed him at maximum medical improvement for his left wrist laceration as of January 22, 2013,, and had assigned a 0% permanent impairment rating.

Claims and Defenses

In June 2013, Claimant filed another PFB seeking, inter alia, authorization for evaluation and treatment with a psychiatrist, authorization for psychotherapy and medication management as recommended by Dr. Segal, and the associated attorney’s fees and costs. At a mediation held on June 24, 2013, the E/C agreed to “schedule a follow up visit with Dr. Segal for treatment” and to “provide transportation for the psychiatric visits with Dr. Segal.” The E/C, however, took no action after the June 24, 2013, mediation to schedule the follow-up visit with Dr. Segal. Claimant filed yet another PFB on June 4, 2014, requesting continued authorization for treatment with the authorized psychiatrist and scheduling of an appointment. In its response to the PFB, the E/C stated: “Dr. Scott Segal remains authorized to perform treatment which is causally related to the Claimant’s industrial injuries” — but, at the mediation held on September 19, 2014, the E/C agreed to- schedule a follow-up appointment .with Dr. Segal “for evaluation only” and indicated that the issue of treatment with Dr. Segal remained outstanding. At . this same mediation, Claimant requested the JCC reserve jurisdiction on attorney’s fees and costs.
Claimant attended the evaluation appointment with Dr. Segal set by the E/C for September 30, 2014. Dr. Segal later testified that Claimant’s complaints at that time were basically the same and that there was no change in diagnosis. In the pretrial stipulation filed October 20, 2014, Claimant asserted claims for continued authorization with his authorized psychiatrist and for costs and. attorney’s fees in accordance with the June 4, 2Ó14, PFB. The E/C stipulated that Claimant’s “subsequent psychiatric condition” was accepted as related to the accident “to [the] extent [the] physical injury remained [the] major contributing cause of [the] need for psychiatric treatment/condition.” The E/C more specifically defended against the claim for psychiatric treatment by asserting that Claimant’s two non-work-related MVAs “served to break the chain of causation between the original work accident of 4/1/12 and claimant’s current need for psychiatric treatment, per § 440.09.” In support of its defense, the E/C submitted deposition testimony from its independent medical examiner (IME), Dr. Miller, that *866 75% of the cause of Claimant’s need for psychiatric treatment is attributable to the second MVA resulting in the right shoulder injury and 25% is attributable to the workplace accident.

Amended Final Order

At the merits hearing, Claimant argued that the E/C had waived the right to deny compensability of his PTSD by operation of subsection 440.20(4). Claimant also raised objections to Dr. Miller’s opinion testimony on causation, including an objection based on section 90.702, Florida Statutes (2013), governing the admissibility of expert testimony (also known as a Daubert objection). In the amended final order now' on appeal,[1] the JCC overruled the Daubert objection based on a finding.that Claimant failed to “appropriately preserve” the objection during Dr. Miller’s deposition. With regard to Claimant’s waiver argument, the JCC noted the positions of the parties concerning subsection 440.20(4), but did not make any relevant findings. Instead, the JCC concluded that Dr. Segal’s somewhat equivocal causation testimony was not clear and convincing evidence to support a claim of a compensa-ble psychiatric injury under section 440.093, Florida Statutes (2011). In the alternative, the JCC also found' that even assuming Claimant met the burden of persuasion under section 440.093, the defénse based on MCC was supported by Dr. Millers’ opinion attributing 75% of cause of Claimant’s PTSD to the non-work-related MVA. The JCC denied the claims for psychiatric care, attorney’s fees, and costs,' accordingly.

Attorney’s Fees

In the first issue on appeal, Claimant argues that the JCC erred by failing to award an attorney’s fee under paragraph 440.34(3)(a), Florida. Statutes (2011), for the successful assertion of a PFB for a medical appointment with Dr. Segal, which was resolved by the parties at mediation before the trial. Indeed, one could read the appealed order as broadly denying all attorney’s fees to Claimant’s counsel, including the fees ,to which he was entitled before trial. But the order also states that its intention is to resolve the dispute brought to trial and litigated — namely, the claim for continuing psychiatric treatment with Dr. Segal. The appealed order does not contain any findings or conclusions on the fees that might be due as a result of the parties’ mediation agreement. We thus modify the order to clarify that the denial of attorney’s fees does not extend to the attorney fee claim based on the benefits obtained via the parties’ mediation agreement.

Application of Subsection 440.20(4)

To prove entitlement to the requested psychiatric treatment, Claimant had the burden to show that the April 1, 2012, Compensable workplace accident is the MCC for his PTSD. §§ 440.09, 440.093, Fla. Stat. (2011). But Claimant need not present such evidence if his PTSD is com-pensable by operation of law. Subsection 440.20(4) provides that where a carrier is uncertain as to its obligation to provide' benefits, it may provide such benefits under a reservation of rights, but then must immediately begin an investigation. If, however, the carrier fails to deny com-pensability of an injury within 120 days after the initial provision of benefits for an injury, it waives the right to deny com-pensability of this injury “unless the carrier can establish material facts relevant to *867 the issue of compensability that it could not discovered through reasonable investigation within the 120-day period.” § 440.20(4), Fla. Stat. (2011). See, e.g., McIntosh v. CVS Pharmacy, 135 So.3d 1157, 1159 (Fla. 1st DCA 2014); Bynum Transp., Inc. v. Snyder, 765 So.2d 752, 764 (Fla. 1st DCA 2000); see also § 440.192(8), Fla. Stat. (2011) (“A carrier that does not deny compensability in accordance with s. 440.20(4) is deemed to have accepted the employee’s injuries as compensable, unless it can establish material facts relevant to the issue of compensability that could not have been discovered ... ”) (emphasis supplied). Claimant argues that his burden of proving compensability of his PTSD was met because the E/C failed to deny compensability of his PTSD within 120 days after initially providing benefits for the PTSD.
In the appealed order, the JCC noted the positions of the parties, but made no findings of fact or conclusions of law relevant to the application of the 120-day rule under subsection 440.20(4). A correct analysis of the issue requires the following findings: (1) the date the E/C first provided benefits for a psychiatric injury; (2) the identity of the specific psychiatric injury for which behefits were provided; and (3) whether the E/C timely denied compensa-bility of the psychiatric injury for which it provided benefits — i.e., within the 120-day period immediately following the initial provision of benefits for the specific psychiatric injury. The necessary analysis may also include a determination of whether the “carrier can establish material facts relevant to the issue of compensability that it could not have discovered through reasonable investigation within the 120-day period,” which is a statutory exception to the 120-day rule. See § 440.20(4), Fla. Stat. (2011).
Once this analysis occurs, then the identity of any psychiatric injury made compensable by operation of the 120-day provisions of subsection 440.20(4), may be determined. And meaningful analysis' can be made as to both whether that compen-sable psychiatric injury is .the MCC for the need for the specific treatment requested by Claimant,' and whether such treatment ⅛ medically necessary. See §§ 440.09, 440.13, Fla. Stat. (2011). Importantly, because medical treatment is usually provided for an injury, not an “accident,” a declaration that the need for specific medical treatment is not caused in major part by the workplace “accident” evades the essential détermination of the identity of the compensable injury. See Jackson v. Merit Elec., 37 So.3d 381, 383 (Fla. 1st DCA 2010) (“Confusion is also generated by the inexact' and conflated use of the terms ‘accident’ and ‘injury.’ An accident results in injuries which require treatment. Generally, treatment is not furnished for an accident, but for an injury.”). Accordingly, whén determining whether the compensable psychiatric injury (vel non) is the MCC for the need for the requested treatment,' the JCC here must consider whether the E/C, in seeking to deny further treatment, has shown a “break” in -the causation chain so that the compensable psychiatric-injury, if any, is “no longer” the MCC of the need for the requested treatment. See Perez v. Se. Freight Lines, Inc.; 159 So.3d 412, 413-14 (Fla. 1st DCA 2015) (noting that once compensability of injury is' established, E/C has burden to demonstrate “a ‘break’ in the causation chain” and that under MCC standard “a ‘break’ is understood to occur when the work-related cause drops to 50% or less of the total cause of the need for the requested benefits”)., Furthermore because the terms “break” and “no longer” indicate a change in status, a “break” in the causation chain cannot be proven here with evidence that the (allegedly) accepted compensable injuiy never *868 met the MCC standard in the first instance. In other words, where the waiver of the right to deny compensability of an identified injury has occurred under subsection 440.20(4), a later finding that the compensable injury was not caused in major part by the workplace accident in the first instance, will not satisfy the .necessary proof that the compensable injury “no longer” remains the major contributing cause of the need for treatment — as such, a finding would be, in actuality, a belated way of saying “the compensable injury was never compensable,” which (assuming the 120-day rule results in waiver) is prohibited under section 440,20(4)..
In this case, the JCC failed to make sufficient findings of fact and conclusions of law concerning the application of subsection 440.20(4). As a result, this court cannot,perform a meaningful review of the JCC’s implicit rejection of Claimant’s arguments based on compensability of his PTSD by operation of subsection 440.20(4). We therefore remand for additional findings upon application of the correct analysis. See Holland v. Cheney Bros., Inc., 22 So.3d 648, 649 (Fla. 1st DCA 2009).

Conclusion

Based on the foregoing, the order on appeal is modified to reflect that the attorney’s fee claim associated with provision of the September 30, 2014, evaluation by Dr. Segal remains unresolved. As modified, the order is AFFIRMED in part, REVERSED in part, and REMANDED with directions for the JCC to make findings of fact and conclusions of law relevant to the application of the 120-day rule under subsection 440.20(4).
SWANSON, OSTERHAUS, and KELSEY, JJ., concur.

. Following entry of the first final order, ‘ Claimant filed a motion for rehearing asserting the same arguments raised in this appeal. Although the JCC denied Claimant’s motion, he subsequently entered the amended final order now on appeal which included changes not relevant to the issues raised here.