FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D17-2664
_____

WILLIAM RENTE,

    Appellant,

    v.

ORANGE COUNTY BOCC and
CANNON COCHRAN
MANAGEMENT SERVICES, INC.,

    Appellees.

_____

On appeal from an order of the Judge of Compensation Claims.
Thomas W. Sculco, Judge.

Date of Accident:  September 8, 2015.

February 11, 2019

PER CURIAM.

In this workers' compensation appeal, the claimant, William Rente, seeks reversal of the order denying him benefits.  The Judge of Compensation Claims (JCC) erred by failing to complete the analysis required by case law and section 440.20(4), Florida Statutes (2015). He further erred in excluding portions of the testimony of an unauthorized physician. We, therefore, reverse and remand for further proceedings.

Factual Background

On September 8, 2015, Rente slipped and fell on an algae-covered walkway. The Employer/Carrier (E/C) initially accepted compensability, and Rente received authorized medical care at Centra Care, starting on September 11. He was diagnosed with a contusion of the sacrum and right hip pain. Because of his continuing complaints, Centra Care referred him for an MRI. The study, completed on October 21, revealed moderate multilevel degenerative disc disease, including a diffuse disc bulge at the L4-5 level and superimposed bilateral posterior lateral disc herniations, right greater than left, causing severe bilateral neural foraminal stenosis and impingement of the bilateral L4 nerve roots. The age of the condition was indeterminate.

On November 9, Dr. Haque, the E/C-authorized orthopedic spine surgeon, examined Rente. Dr. Haque testified that Rente complained of continuing symptoms of low back pain radiating to the right lower extremity. The doctor stated that Rente gave him a history of episodic low back pain that predated the workplace accident, but explained that it was different from his present complaints and that it had not prompted him to seek medical care. Rente told the doctor that he had previously seen a chiropractic physician for his neck, but not for his low back.

The adjuster testified that Rente did not name his chiropractor until December 4, 2015, when Rente reported to the Carrier that he had received treatment from Dr. Fogarty prior to his workplace accident. Thereafter, the Carrier secured Dr. Fogarty's records and scheduled Rente for an independent medical evaluation. On May 1, 2016, the E/C filed their Notice of Denial, asserting that the 2015 workplace accident was no longer the major contributing cause of Rente's need for treatment or entitlement to disability benefits.

Litigation Below

Rente argued at the final hearing that the E/C were estopped from denying compensability because they waived that right by failing to deny compensability within 120 days, and the E/C accepted as compensable the low back condition by providing treatment for it. The E/C argued that the exception to the 120-day

2

rule applied because there were facts and information they could not have discovered within 120 days.

At the hearing, the E/C objected to any opinion testimony voiced by Dr. Fogarty. The JCC agreed that opinions given by unauthorized physicians were admissible to the extent the testimony addressed the diagnosis of a pre-existing condition; however, when the JCC was advised that Dr. Fogarty had been deposed after the subject claim was filed and had been asked questions about Rente's prior diagnosis, the JCC sustained the objections, concluding that any testimony given after the date of the accident was an inadmissible opinion.

The JCC denied and dismissed all of the claims with prejudice. He rejected the E/C's argument that they accepted compensability only of an exacerbation of a pre-existing condition, and the E/C has not challenged that finding on appeal. The JCC noted, however, that Dr. Haque changed his opinion on causation after reviewing Dr. Fogarty's pre-accident records that detailed treatment provided for Rente's low back complaints, and that Dr. Haque's change of opinion, along with the E/C's notice of denial, occurred more than 120 days from the initial provision of benefits. The JCC explained that Rente's misrepresentation about his prior low back symptoms to Dr. Haque, as testified by Dr. Haque, does not change this part of the analysis. Nevertheless, "[i]t is highly significant . . . to the issue of whether 'the carrier can establish material facts relevant to the issue of compensability that it could not have discovered through reasonable investigation within the 120 day period . . . .'"

The JCC concluded that the E/C performed "a reasonable and timely investigation into the compensability of claimant's low back condition. It was claimant's misstatements to Dr. Haque about prior symptoms and treatment to his low back that were the direct and proximate cause of any delay in the [E/C] issuing its notice of denial." Accordingly, the JCC found that the E/C had "not waived the right to deny compensability of claimant's low back condition." The JCC did not, however, decide when the E/C had sufficient information to renew its investigation after receipt of the additional information in this case.

3

## 120-Day Rule

Section 440.20(4) provides:

> If the carrier is uncertain of its obligation to provide all benefits or compensation, the carrier shall immediately and in good faith commence investigation of the employee's entitlement to benefits under this chapter and shall admit or deny compensability within 120 days after the initial provision of compensation or benefits as required under subsection (2) or s. 440.192(8). Additionally, the carrier shall initiate payment and continue the provision of all benefits and compensation as if the claim had been accepted as compensable, without prejudice and without admitting liability. Upon commencement of payment as required under subsection (2) or s. 440.192(8), the carrier shall provide written notice to the employee that it has elected to pay the claim pending further investigation, and that it will advise the employee of claim acceptance or denial within 120 days. A carrier that fails to deny compensability within 120 days after the initial provision of benefits or payment of compensation as required under subsection (2) or s. 440.192(8) waives the right to deny compensability, unless the carrier can establish material facts relevant to the issue of compensability that it could not have discovered through reasonable investigation within the 120-day period.

The JCC's finding that the E/C established "material facts relevant to the issue of compensability that it could not have discovered through reasonable investigation within the 120 day period" has record support. Likewise, the JCC's conclusion that "[i]t was claimant's misstatements to Dr. Haque about prior treatment to his low back that were the direct and proximate cause of any delay in the [E/C] issuing its notice of denial" has record support.[*] That the cause for the delay was a misrepresentation

---

[*] We would note that the E/C neither pled nor pursued a fraud defense pursuant to sections 440.09(4) and 440.105(4)(b), Florida Statutes.

4

does not control the analysis required here, however, because the JCC erred when he found the E/C "perform[ed] a reasonable and timely investigation into the compensability of claimant's low back condition." The JCC could not reach such a conclusion in the absence of a finding as to when that investigation should have begun.

The statute does not require that certainty exist before the investigation period begins to run; otherwise, why would a carrier have 120 days to investigate? As noted in *Mims v. Confederated Staffing*, 940 So. 2d 518, 520 (Fla. 1st DCA 2006), "[t]he statute does not . . . provide that the carrier have nothing less than actual notice, but rather that it have sufficient information to enable it to deny compensability within 120 days." Further, "[t]he requirement of an 'immediate and good faith' investigation does not mandate that every investigative act that can be taken is, in fact, taken. It is merely a requirement that the E/C be prepared to decide, *within 120 days*, what position they wish to take on a given claim, and be accountable for that decision." *Wintz v. Goodwill*, 898 So. 2d 1089, 1091 (Fla. 1st DCA 2005) (emphasis added).

When the 120-day period begins to run is a factual determination. *See Sierra v. Metropolitan Protective Services*, 188 So. 3d 863 (Fla. 1st DCA 2015).

If there were material facts the E/C was not aware of, the carrier still had the obligation to conduct an investigation once it became aware of sufficient pertinent information. In *Mims*, following the claimant's December 31, 2003, workplace accident, the E/C accepted compensability of the claimant's low back condition and provided both medical and indemnity benefits. 940 So. 2d at 519. The diagnosed condition was an L4-5 disc herniation for which surgery was recommended and performed. *Id*. The surgical note prepared on June 24, 2004, "disclosed spinal stenosis with no evidence of disc herniation." *Id*. The surgeon, in a conference with the E/C's attorney on November 15, 2004, "informed the E/C's attorney that 100 percent of claimant's need for medical treatment was caused by pre-existing degenerative changes due to claimant's personal condition, spinal stenosis." *Id*. In its analysis, the *Mims* court explained as follows:

5

Although we acknowledge that nothing in the medical records prior to the laminectomy conducted on June 24, 2004, placed the E/C on notice that the back injury suffered by claimant during the course of his employment was not the major contributing cause of his condition, we are unable to uncover any support in the record for the judge's finding that such notice was not received by the carrier until the conference of November 15, 2004.

Dr. Scharf's surgery notes of June 24, 2004, should have reasonably brought to the carrier's attention the fact that claimant's personal condition preexisted the industrial accident, thereby alerting it to the necessity of beginning an investigation, yet it failed to take any action within 120 days from such notice. The carrier presented no evidence that Dr. Scharf did not provide his office notes to it, that he misled it, or that his notes were lost or misplaced. The only evidence offered by the carrier as an excuse for its failure to deny within the 120-day period was that it only actually became aware as of November 15, 2004, that the industrial accident was not the major contributing cause of the injury. The statute does not, however, provide that the carrier have nothing less than actual notice, but rather that it have sufficient information to enable it to deny compensability within 120 days.

In our judgment, the carrier had such information through the provision of Dr. Scharf's notes.

*Id.* at 520 (citation omitted).

Here, on remand, the JCC must determine *when* the E/C had material facts relevant to the issue of causation that called into question their obligations to Rente, thus triggering the duty to "immediately and in good faith commence investigation of the employee's entitlement to benefits under this chapter" and *whether* they denied compensability within 120 days thereafter. § 440.20(4), Fla. Stat.

6

## Exclusion of Testimony

A JCC's exclusion of evidence is reviewed for an abuse of discretion. *See Escutia v. Greenleaf Prods., Inc.*, 886 So. 2d 1059, 1060 (Fla. 1st DCA 2004). Section 440.13(5)(e), Florida Statutes (2015), provides the only medical opinion testimony admissible before the JCC is that of expert medical advisors, independent medical examiners, and authorized treating physicians.

Nevertheless, this court has determined the testimony of a physician other than those enumerated in section 440.13(5)(e) is admissible to the extent it is limited to "a factual report of the information contained in [a doctor's] office records" regarding the claimant. *Office Depot v. Sweikata*, 737 So. 2d 1189, 1191 (Fla. 1st DCA 1999). That testimony can include a claimant's complaints, the doctor's diagnosis, and the prescribed treatment. *Id.*

Our review of the JCC's order failed to locate any specific guidance as to what portions of Dr. Fogarty's records and deposition the JCC found were admissible, if any. When referencing Dr. Fogarty, the JCC refers to the doctor's records, not his deposition testimony. To the extent the JCC excluded any of Dr. Fogarty's deposition testimony or any portion of the doctor's reports, it was error. Dr. Fogarty was not asked to express an opinion relative to the issue before the JCC, which was medical causation. Rather, the doctor was asked to describe the treatment he provided to Rente and was asked to put Rente's complaints and the clinical exam results into context. *See Gutierrez v. Vargas*, 239 So. 3d 615, 622 (Fla. 2018) ("While an expert witness assists the jury to understand the facts, a treating physician testifies as a fact witness 'concerning his or her own medical performance on a particular occasion and is not opining about the medical performance of another.' *Fittipaldi USA, Inc. v. Castroneves*, 905 So.2d 182, 186 (Fla. 3d DCA 2005). This necessarily involves testifying with regard to the exercise of the treating physician's specialized medical knowledge as applied to other facts of the case, namely the plaintiff's symptoms. A treating physician is a fact witness, and testifies to past facts based on personal knowledge.").

Arguably, the closest Dr. Fogarty came to expressing an opinion was in answer to the question of whether he ever suspected Rente was suffering from a herniated disc. But this question only

7

asks that the doctor summarize Rente's symptoms, the results of diagnostic testing, and his ensuing diagnosis. The JCC should have considered the totality of Dr. Fogarty's testimony and records.

Conclusion

On remand, the JCC must determine the start date of the 120-day pay-and-investigate period and then determine whether the E/C denied compensability in a timely manner. If the JCC determines once again that the E/C did not waive the right to deny compensability, the remaining issues must be re-addressed after consideration of Dr. Fogarty's testimony in full.

REVERSED and REMANDED for further proceedings consistent with this opinion.

WOLF and BILBREY, JJ., concur; KELSEY, J., dissents with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

KELSEY, J., dissenting.

This case is not about the 120-day rule so much as it is about the E/C's independent right to contest major contributing cause. The JCC expressly found that pre-existing conditions were the MCC of Claimant's need for treatment after his fall. This finding is supported by competent, substantial record evidence in the Claimant's medical records and in the opinions of Drs. Haque and Meinhardt, which the JCC was entitled to accept in lieu of the contrary opinion from IME physician Dr. Greenberg. There is no outcome-determinative reason to remand for the JCC to specify which parts of Dr. Fogarty's deposition were improper opinion testimony and then ask Dr. Meinhardt if that changes his ultimate opinions on MCC. In relevant part, Dr. Fogarty's deposition testimony duplicated the contents of his records concerning Claimant's complaints, examinations, and test results, which

8

alone are sufficient to support a conclusion that the fall was not the MCC of the need for treatment. With or without the clearly factual parts of Dr. Fogarty's deposition, the opinions of Drs. Haque and Meinhardt were sufficiently supported by competent, substantial evidence including Dr. Fogarty's records, which duplicated the factual parts of his deposition testimony. The E/C was not required to cross-appeal in order to rely on the JCC's express finding, supported by competent, substantial evidence, that the Claimant's fall was not the MCC of his need for treatment. A remand on this record simply runs up the costs of reaching the same conclusion. We should affirm in all respects.

_____

Bill McCabe, Longwood, and Manuel Franco, Tampa, for Appellant.

Kristen L. Magana of Broussard, Cullen & Blastic, P.A., Orlando, for Appellees.

9