# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2023-2428
_____

EDWARD KOREN,

    Appellant,

    v.

CITY OF KISSIMMEE, and
PREFERRED GOVERNMENTAL
CLAIM SOLUTIONS,

    Appellees.

_____

On appeal from the Office of the Judges of Compensation Claims.
Lourdes M. Sancerni, Judge.

Date of Accident: December 2, 2019.

June 10, 2026

PER CURIAM.

Edward Koren, the claimant, appeals a final compensation order denying his request for psychiatric treatment related to his compensable on-the-job accident. He argues that the Judge of Compensation Claims (JCC) erred in concluding that the City of Kissimmee and its servicing agent had not waived their defenses to the petition under section 440.20(4), Florida Statutes (2019), and that the JCC thus erred as a matter of law by not shifting the burden of proof to the E/C.

We affirm the final compensation order because Koren failed to challenge an alternative basis for the JCC's ruling. *See Nat'l Equity Recovery Servs., Inc. v. Amerifund Equity Grp.*, 428 So. 3d 635, 635 (Fla. 6th DCA 2026); *Mirlalda v. Mitchell*, 423 So. 3d 951, 951 (Fla. 6th DCA 2025) (citing *Willens v. Willens*, 225 So. 3d 1017, 1018 (Fla. 1st DCA 2017) (Winsor, J., concurring) ("When a decision is based on more than one independent ground and the initial brief challenges only one, we must affirm.")). The JCC denied relief to Koren on multiple alternative grounds. Among them, that he failed to satisfy his burden to establish that the medical benefits sought were medically necessary.

AFFIRMED.

ROWE and RAY, JJ., concur; M.K. THOMAS, J., specially concurs with opinion.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

M.K. THOMAS, J., specially concurring.

I join the majority in ultimately affirming the order on appeal but write to address several of the alternative findings of the JCC. The factual backdrop of the case is imperative to an understanding of the issues.

### I. Facts

On December 2, 2019, Koren sustained physical injuries to his upper lip, tooth, right knee, and right foot when a board gave way on a deck he was repairing for the City. The accident was accepted as compensable and various doctors were authorized for physical injuries, including an ear nose and throat specialist, dentist, orthopedist, and plastic surgeon.

In October 2022, Koren set up and attended an independent medical examination with Dr. Ruano, a psychiatrist. Dr. Ruano reported "disfigurement of [Koren's] upper lip" and diagnosed him with "adjustment disorder with mixed anxiety and depressed mood." Dr. Ruano opined that the cause of the psychiatric diagnosis was "the actual appearance of the scar" that resulted from the on-the-job accident. He recommended Koren continue medications, including an anti-depressant, and follow up with a psychiatrist for the medication and a psychologist for therapy. He gave no opinion on whether the medical treatment recommended was medically necessary.

Koren filed a Petition for Benefits (PFB) attaching Dr. Ruano's report and requesting the City "authorize and set up psychiatric care recommended by Dr. Ruano." The City filed a Response to the PFB advising that "[it] has authorized Dr. Cubano and the injured worker saw him on 1/19/23." It did not file a notice of denial or send a written notice to Koren that the 120-day pay-and-investigate provision was being invoked.

At his deposition, Dr. Cubano, a psychiatrist, confirmed that he had received an authorization letter from the City, had seen Koren, and that his bill had been paid. He testified that the appointment was not set up as an evaluation only and he never received a deauthorization letter or a notice of suspension of authorization from the City. Ultimately, Dr. Cubano opined that the psychiatric condition was not caused by the industrial accident, and that Koren's PTSD was attributable to his prior employment as a law enforcement officer and a volunteer firefighter. He also concluded that the work accident was not the major contributing cause (MCC) of the psychiatric condition. He gave no opinion on medical necessity of the recommended psychiatric treatment regardless of its cause. The City did not schedule any follow-up appointments for Koren with Dr. Cubano.

At her deposition, the workers' compensation adjuster for the City confirmed that she did not invoke the 120-day pay-and-investigate option upon authorization of Dr. Cubano for psychiatric care. She received Dr. Cubano's report on January 30, 2023. Regardless, she did not file a notice of denial or take any other action. During the deposition, Koren's counsel asked, "Is

3

[Koren's] psych condition compensable, being accepted as compensable then?" Before responding, the City's counsel objected and instructed her not to answer on the basis that the inquiry "invades attorney-client privilege."[1]

In May 2023, the parties completed a Uniform Pretrial Stipulation. The City stipulated that Dr. Cubano was authorized. For the first time, it denied psychiatric treatment. It listed defenses as follows: "[The City] timely authorized Dr. Cubano and claimant was seen on 1/19/23" and "Dr. Cubano opined that claimant's psychological or psychiatric conditions are not causally related to industrial accident." Koren raised the affirmative defense, among others, that the City had waived its right to deny compensability of the PTSD condition pursuant to the 120-day rule. Despite the conflict in psychiatric opinions, neither party nor the JCC requested an expert medical advisor.

At the final hearing, the adjuster testified, in conflict with her deposition testimony and that of Dr. Cubano, that the appointment with Dr. Cubano was set up as a one-time evaluation only. She also confirmed that, despite receiving Dr. Cubano's opinion that the PTSD condition was not related to the work accident, no notice of denial was filed with the Division of Administrative Hearings and no notice given to Koren or Dr. Cubano regarding deauthorization of psychiatric treatment. Koren argued that pursuant to the 120-day provision, the City waived its ability to deny compensability of the PTSD condition and care. The City responded that the 120-day provision did not apply because it accepted the accident as compensable and then challenged only the connection between the work accident and the need for psychiatric benefits, arguing that the 120-day rule applies only to the initial provision of benefits generally and not to each specific request for treatment. Alternatively, the City asserted that, if the 120-day rule applied, it timely denied the psychiatric condition on the Pretrial Stipulation filed within 120 days of its receipt of Dr. Cubano's report.

---

[1] Claimant's counsel certified the question, but the record is silent regarding whether the matter was brought before the Judge of Compensation Claims (JCC) to compel a response.

4

In the final order, the JCC identified the primary issue as follows:

> . . . I find that the issue in the instant matter is the causal relationship between the compensable physical injury and the psychiatric condition for which [Koren] is seeking a medical benefit. Therefore, the [E/SA] is not precluded from challenging the entitlement of the medical benefit sought in the Petition for Benefits.

Ultimately, the JCC denied the claim for psychiatric treatment because: 1) she accepted Dr. Cubano's opinions over Dr. Ruano's and determined Koren had failed to satisfy his burden of proving that the compensable physical injury was at least 50% responsible for the PTSD as required by section 440.093(2), Florida Statutes; 2) the 120-day rule did not apply because the City never furnished psychiatric treatment to Koren but provided only a single evaluation; 3) the City was merely contesting Koren's entitlement to the specific benefits requested, not compensability of the "injury;" and 4) Koren "did not meet his burden to establish the medical benefits sought in the [PFB] are medically necessary."

## II. *Analysis*

This Court "reviews findings of fact for competent, substantial evidence and a JCC's interpretation of law de novo." *Churchill v. DBI Servs., LLC*, 361 So. 3d 896, 900–01 (Fla. 1st DCA 2023) (citing *Sullivan v. NUC02, LLC/Broadspire*, 308 So. 3d 659, 662 (Fla. 1st DCA 2020)).

Koren asserts four errors by the JCC. Initially, he argues that the JCC failed to apply the plain language of subsection 440.20(4), Florida Statutes, (the 120-day pay-and-investigate provision), to bar the City's denial of psychiatric care. But, the 120-day pay-and-investigate provision does not apply here—not because treatment was not provided by the City, as found by the JCC, but because the City never invoked the pay-and-investigate privilege.

Under the framework of sections 440.09, 440.20, and 440.192, Florida Statutes, this Court has often summarized a carrier's options upon receipt of a request for benefits as "pay, pay and

investigate, or deny." *Id.* at 902; *Franklin v. Nw. Airlines*, 778 So. 2d 418, 421 (Fla. 1st DCA 2001); *Bynum Transp., Inc. v. Snyder*, 765 So. 2d 752, 754 (Fla. 1st DCA 2000). The catchphrase remains an accurate shorthand for the statutory scheme.

## *A. Pay*

In choosing to provide or "pay" the initial request for benefits, an employer/carrier (E/C) may: 1) pay outright; or 2) pay and invoke the 120-day pay-and-investigate period which allows payment without prejudice to its right to deny compensability of an accident or injury. *See* §§ 440.20(4), 440.192(8), Fla. Stat.

Section 440.09(1), Florida Statutes (2019), mandates that the employer "pay compensation or furnish benefits required by this chapter if the employee suffers an accidental compensable injury or death arising out of work performed in the course and scope of employment." Carriers must pay the first installment of death or disability benefits within fourteen days of receiving notification of the injury. *See* § 440.20(2)(a), Fla. Stat. These timelines apply even if a carrier is unsure of its liability. *See Churchill*, 361 So. 3d at 902. An uncertain carrier may avail itself of an option allowing it to pay while reserving its right to deny within 120 days. As section 440.20(4) explains:

> If the carrier is uncertain of its obligation to provide all benefits or compensation, the carrier shall immediately and in good faith commence investigation of the employee's entitlement to benefits under this chapter and shall admit or deny compensability within 120 days after the initial provision of compensation or benefits as required under subsection (2) or s. 440.192(8).

Section 440.192(8) reiterates that the pay-and-investigate option is also available if the carrier receives the initial request via a PFB. As this Court has previously declared, the 120-day pay-and-investigate option is not limited to the initial request for benefits following an accident; it may also be invoked when a new injury or condition later arises, and treatment is requested. *See McIntosh v. CVS Pharmacy*, 135 So. 3d 1157, 1159 (Fla. 1st DCA 2014) (explaining that 120-day pay-and-investigate period relates to

6

compensability—whether of the initial accident or to a specific injury or condition); *Sierra v. Metro. Protective Servs.*, 188 So. 3d 863, 866–67 (Fla. 1st DCA 2015); Bynum Transp., Inc., 765 So. 2d at 754 (holding section 440.20(4) applies to any claim for compensability of any injury made following date of accident, not just the first claim). Thus, when an employee claims a new injury or condition arising out of an accident, even if the work accident is accepted as compensable, the carrier has the three options upon the initial request for benefits: "pay, pay and investigate, or deny."

However, to trigger the 120-day pay-and-investigate option and take advantage of its protections, an E/C must affirmatively invoke it. A 120-day protection window to deny does not automatically apply or attach to an E/C's provision of initial care. The misconception that a 120-day window is automatic was recently dispelled by *Churchill*. In *Churchill*, this Court distinguished a portion of the analysis in *Checkers Restaurant v. Wiethoff*, 925 So. 2d 348, 350–51 (Fla. 1st DCA 2006) (en banc), which fostered this confusion. The dicta in *Checkers Restaurant* provided:

> [A]lthough section 440.20(4) directs the E/C to provide written notice when it has elected to pay the claim pending further investigation, an E/C's failure to provide such notice does not negate application of the section 440.20(4) waiver when the E/C does not deny compensability within 120 days of the initial provision of benefits.

*Churchill* cleared the fog created by *Checkers Restaurant* by clarifying,

> [T]he dicta in *Checkers Restaurant* conflicts with the plain language of section 440.20(4) requiring notice that the right to pay and investigate is being invoked "upon commencement of payment." . . . "Other issues concerning the worker's entitlement to benefits remain subject to challenge, including the extent of the compensable injury and the causal relationship between the compensable injury and the condition for which the worker seeks benefits."

7

*Churchill*, 361 So. 3d at 904 (quoting *Checkers Rest.*, 925 So. 2d at 349). Thus, uncertain carriers that desire to use the option must, per the plain language of the statute, affirmatively invoke it by sending a 120-day letter. *Id.* at 902. "Without a pay and investigate letter, then, the E/Cs who have furnished benefits are 'deemed to have accepted the employee's injuries as compensable' or to have 'waive[d] the right to deny compensability unless [they] can establish material facts relevant to the issue of compensability that [they] could not have discovered through reasonable investigation within the 120-day period.'" *Id.* at 903 (citing §§ 440.192(8), 440.20(4), Fla. Stat.). Without proper invocation, there is no 120-day window that automatically attaches to an initial provision of benefits.

## *B. Deny*

A denial of benefits by an E/C may be accomplished explicitly or implicitly. Sections 440.20(3) and 440.192(8) require that an E/C that chooses to deny a request for benefits must notify the injured employee and, in the case of a response to a PFB, explain its justification for nonpayment. Compliance provides an explicit denial. When an E/C does nothing in response to a request for benefits—meaning it does not pay or explicitly deny by giving notice—the E/C is deemed to have denied the claim. *See Bussey v. Wal-Mart Store No. 725*, 867 So. 2d 542, 546 (Fla. 1st DCA 2004); *Russell Corp. v. Brooks,* 698 So. 2d 1334, 1335 (Fla. 1st DCA 1997) (holding that an E/C which neither denies a petition for benefits nor elects to pay and investigate pursuant to section 440.20(4) is placed in the identical position as the E/C that files a notice of denial). Thus, an E/C's inaction after receipt of a request for benefits equates to a denial. Neither section 440.20 nor 440.192 imposes a penalty for failure to file a timely notice of denial or when no notice of denial is filed. "The sanctions to be imposed upon a carrier who either files an untimely notice of denial or takes no action are found elsewhere in chapter 440." *N. River Ins. Co. v. Wuelling*, 683 So. 2d 1090*,* 1092 (Fla. 1st DCA 1996).[2]

---

[2] Carriers are subject to sanctions, including penalties, interest and attorney's fees if the carrier fails to pay timely. *See* §§ 440.20(6)–(8), 440.34(3), Fla. Stat.; Fla. Admin. Code R. 69L-

*C. As Applied to Facts*

Koren alleged that a psychiatric injury resulted from his compensable physical injuries and requested authorization of medical care via a PFB. The City elected to provide the benefit outright. It filed a Response to PFB advising that Dr. Cubano was "authorized." It did not invoke the 120-day pay-and-investigate option or deny compensability. The JCC reasoned that the 120-day pay-and-investigate provision was not triggered because the City never provided "treatment" for the PTSD. While the JCC was ultimately correct that the 120-day pay-and-investigate period does not apply here, its nonapplication is for different reasons. First, the 120-day pay-and-investigate provision does not apply because it was never invoked by the City. Secondly, an evaluation is sufficient to satisfy an initial provision of benefits for purposes of the 120-day pay-and-investigate provision.

The JCC found that the City set up an evaluation only with Dr. Cubano. But this finding is not supported by competent, substantial evidence. This determination had a dual impact—it influenced the JCC's decision that the 120-day pay-and-investigate provision did not apply (albeit incorrectly) and resulted in Koren being held to an improper standard of proof.

The JCC distinguished this Court's holding in *Sierra,* 188 So. 3d 863, because she perceived Dr. Cubano's appointment as a one-time evaluation only. But Koren established the following unrefuted facts: 1) the City notified him that Dr. Cubano was "authorized" in its response to the PFB requesting psychiatric treatment; 2) Dr. Cubano testified he received a letter from the City authorizing him with no clarification of limited parameters; 3) after being evaluated by Dr. Cubano and the City received the medical report, the City did not file a notice of denial or provide notice that Dr. Cubano had been deauthorized; 4) the first communication of the City's deauthorization of Dr. Cubano and a

24.006 and 69L-56.500 (providing a penalty for untimely filing practices, designating assessments for untimely filings based on overall carrier performance).

9

denial of treatment for the PTSD arose in a Uniform Pretrial Stipulation; and 5) the adjuster testified at deposition that Dr. Cubano was authorized.

Upon the initial request for psychiatric care, the City authorized Dr. Cubano. After receiving his medical report, the City did nothing until it denied compensability of the condition and further treatment in the Uniform Pretrial Stipulation, almost four months after authorizing Dr. Cubano. The City's attempt to recast the authorization of Dr. Cubano as a "one-time evaluation" does not undo the statutory waiver. *See Tomaskovich v. Lapointe*, 904 So. 2d 538, 540 (Fla. 1st DCA 2005) ("[T]he benefit that triggers the 120-day period must actually be provided, not merely authorized."); *Osceola Cnty. Sch. Bd. v. Arace*, 884 So. 2d 1003, 1006 (Fla. 1st DCA 2004) ("[T]he first authorized doctor's visit by a claimant is the 'initial provision of benefits' beginning the 120-day pay-and-investigate period mentioned in section 440.20(4), Florida Statutes (2000).").

Even so, this Court has held that a one-off medical evaluation can constitute treatment or provision of a benefit. *See Nunez v. Pulte Homes, Inc.*, 985 So. 2d 695, 697 (Fla. 1st DCA 2008) (holding that authorized evaluation and diagnosis constitutes treatment for purposes of one-time change under section 440.13(2)(f), Florida Statutes); *Bynum Transp., Inc.*, 765 So. 2d at 754; *Fla. Hosp. v. Taylor*, 784 So. 2d 601, 603 (Fla. 1st DCA 2001) (holding that an evaluation constitutes a benefit for purposes of attorney's fees under section 440.34, Florida Statutes). And we have specifically held that a carrier may utilize the 120-day pay-and-investigate option upon providing an evaluation. *See Friesen v. Highway Patrol/Div. of Risk Mgmt.*, 364 So. 3d 1051, 1053 (Fla. 1st DCA 2023) (noting that E/C's authorization of a cardiologist "for evaluation" was sufficient to initiate 120-day period); *McIntosh*, 135 So. 3d at 1159 (holding that second 120-day period in case, for subsequently developed PTSD, began at first treatment for the psychiatric evaluation).

Regardless of any dispute over the provision of "treatment," the City never invoked the pay-and-investigate privilege. Having decided to outright pay and provide the request for psychiatric care, without invoking the protection of the 120-day investigation

period, the City accepted compensability of the PTSD. It did, however, retain its ability to defend entitlement to ongoing psychiatric treatment. Once an injury is accepted as compensable—whether expressly or by operation of the 120-day rule—the E/C may challenge only the causal link between that injury and particular treatments. *See Perez v. Se. Freight Lines, Inc.*, 159 So. 3d 412, 413 (Fla. 1st DCA 2015). Accordingly, the JCC erred as a matter of law in holding Koren to a standard of proof regarding compensability of the psychiatric condition itself under section 440.093(2).

Because the City accepted compensability of the PTSD by providing benefits, the applicable standard of proof is that required for entitlement to further medical care. Having accepted compensability, the City must show a break in the causation chain, specifically that the compensable injury is no longer the MCC of the need for the requested treatment. *See id.* at 413–14 (noting that once compensability of injury is established, the E/C has the burden to demonstrate "a break in the causation chain" and that under the MCC standard "a 'break' is understood to occur when the work-related cause drops to 50% or less of the total cause of the need for the requested benefits"). "[W]here the waiver of the right to deny compensability of an identified injury has occurred . . . a later finding that the compensable injury was not caused in major part by the workplace accident in the first instance, will not satisfy the necessary proof that the compensable injury 'no longer' remains the major contributing cause of the need for treatment— as such a finding would be, in actuality, a belated way of saying 'the compensable injury was never compensable,' which (assuming the 120–day rule results in waiver) is prohibited under section 440.20(4)." *Sierra*, 188 So. 3d at 867–68.

That established, although the City did not demonstrate a break in the causal chain, Koren still carried the burden to prove that the requested psychiatric benefits were medically necessary. *See Ascension Benefits & Ins. Sols. of Fla. v. Robinson*, 232 So. 3d 1178 (Fla. 1st DCA 2017). In this alternative finding for denial of the requested psychiatric benefits, the JCC determined that Koren did not satisfy this burden. Koren did not challenge this alternative finding below or on appeal. The failure of proof of

medical necessity alone supports the JCC's denial of the requested benefits.[3]

_____

Nicolette E. Tsambis of Smith, Feddeler, Smith P.A., Lakeland, for Appellant.

Michael Broussard of Broussard, Cullen & Eldridge, P.A., Orlando, for Appellees.

_____

[3] On these facts, we are not compelled to address the interplay between the waiver provision of section 440.20(4) and the standards mandated by section 440.093 for mental and nervous injuries. That is, whether the waiver provision of section 440.20(4) supersedes the language of section 440.093(3) which provides, "Mental or nervous injuries are compensable only in accordance with the terms of this section." (Emphasis added.) Here, because the E/C accepted compensability of the PTSD condition by outright providing treatment without invoking the 120-day pay-and-investigate privilege, the task of harmonizing sections 440.20(4) and 440.09(3) is not before us.